Stephan SCHMIDHEINY

v.

Steven WEBER d/b/a/ Domainsale and Famology.com, Inc. and Famology.com, Inc.

No. C.A.01–377.

United States District Court, E.D. Pennsylvania.

Sept. 10, 2003.

Lile H. Deinard, Neil E. McDonell, Marc S. Reiner, from Dorsey & Whitney LLP, New York City, for Plaintiff.

Anthony DeGidio, Law Offices of Anthony DeGidio, Toledo, Ohio, for Defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, Stephan Schmidheiny brought this action alleging violation of the Anti-cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1129. Presently before the court are the parties renewed cross motions for summary judgment predicated upon a joint stipulation of undisputed facts. For the reasons which follow, we enter judgment in favor of the Schmidheiny.

The joint stipulation establishes the following facts:

1. Plaintiff Stephan Schmidheiny (Mr. Schmidheiny) is a living individual.

2. Mr. Schmidheiny has been ranked among the wealthiest individuals in the world by *Forbes* magazine for the past three years. (McDonell Decl., Exh. 1 at p. 114; Exh. 2 at p. 263; Exh. 3 at p. 228)

3. The Internet domain name <schmidheiny.com> includes the Schmidheiny surname.

4. Mr. Schmidheiny did not consent to the defendants registration of the domain name <schmidheiny.com>. (McDonell Decl., Exh. 11 at & 1)

5. Mr. Weber has registered or otherwise acquired Internet domain names listing Domainsale and Weber Technologies as the registrants. (McDonell Decl., Exh. 13)

6. Famology.com, Inc. was incorporated in April 2000. (McDonell Decl., Exh. 32)

7. Mr. Weber is the President and Treasurer of Famology.com, Inc. (McDonell Decl., Exh. 32)

8. Mr. Weber is currently listed as the administrative and technical contact for Famology.com, Inc. for the <schmidheiny.com> domain name. (McDonell Decl., Exh. 7)

9. One or both of the defendants sold or transferred the domain name <silverman.com> to a third party in return for a payment of $8,500. (McDonell Decl., Exh. 12)

10. One or both of the defendants sold or transferred the domain name <murdock.com> to a third party in return for a payment of $9,500. (McDonell Decl., Exh. 12)

11. One or both of the defendants sold or transferred the domain name <gould.com>. (McDonell Decl., Exh. 12)

12. In 2000, one or both of the defendants offered the domain name <moran.com> for sale for $50,000 through <virtualestate.com>, a website controlled by one or both of the defendants. (McDonell Reply Decl., Exh. 2; Exh. 3) That <virtualestate.com> website states that "The following Domain Names are for sale," including <moran.com>. (McDonell Reply Decl., Exh. 2 at § 00036) The domain name <moran.com> includes a word that is a surname. (See Defendant's Cross Motion for Summary Judgment and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at p. 3 ¶ ¶ 4, 7)

13. One or both of the defendants has registered the domain name <pritzker.com>. (McDonell Decl., Exh. 10)

14. Jay Robert Pritzker and Thomas Pritzker have been ranked among the world's wealthiest individuals by *Forbes* magazine. (McDonell Decl., Exh. 1 at p. 112)

15. On or about October 14, 1999, Mr. Weber received a protest letter from counsel for Jay Robert Pritzker based on the registration of the domain name <pritzker.com>. (McDonell Decl., Exh. 19)

16. One or both of the defendants sold or transferred the domain name <pritzker.com> to a third party. (McDonell Decl., Exh. 12)

17. One or both of the defendants has registered the domain name <kohlberg.com>. (McDonell Decl., Exh. 10)

18. Jerome Spiegel Kohlberg, Jr. has been ranked among the world's wealthiest individuals by Forbes magazine. (McDonell Decl., Exh. 1 at p. 124)

19. In May 2000, Mr. Weber was paid $3,000 by Kohlberg & Co., L.L.C. in exchange for the transfer of <kohlberg.com>. (McDonell Decl., Exh. 15)

20. One or both of the defendants has registered the domain name <whoopi.com>. (McDonell Decl., Exh. 10)

21. One or both of the defendants was paid $9,000 by the entertainer Whoopi Goldberg or her representative or affiliated company in return for the domain name <whoopi.com>. (McDonell Decl., Exh. 12)

22. The Declaration of Marc Reiner in Support of Plaintiff's Motion for Summary Judgment, which was filed under seal, attaches as Exhibit 1 documentation of a payment received by one or both of the defendants in exchange for a domain name that includes an individual's surname.

23. One or both of the defendants has registered the domain names <princess-di.net>, <princess-di.com>, <ladydiana.net>, <ladydiana.org>, <ladydi.net>, <lady-di.com>, and <lady-diana.com>. (McDonell Decl., Exh. 10; Exh. 12)

24. One or both of the defendants sold the domain names <ladydiana.org>, <lady-di.com>, and <lady-diana.com> for $500 each. (McDonell Decl., Exh. 12)

25. One or both of the defendants has registered the domain names <motherteresa.com>, <motherteresa.net>, <motherteresa.org>, <mother-teresa.com>, <mother-teresa.org>, and <mother-teresa.net>. (McDonell Decl., Exh. 10)

26. One or both of the defendants has registered the domain names <sultanofbrunei.com>, <sultanofbrunei.net>, <sultanbrunei.com>, and <hmsultanofbrunei.com>. (McDonell Decl., Exh. 10)

27. One or both of defendants has registered the domain name <rossperot.com>. (McDonell Decl., Exh. 10)

28. Ross Perot's company, Perot Systems Corporation, brought an arbitration proceeding against Domainsale. (McDonell Decl., Exh. 13)

29. The arbitrator in that proceeding found that Mr. Weber registered or acquired the domain name <rossperot.com> primarily for the purpose of selling, renting or otherwise transferring the domain name for valuable consideration in excess of his out-of-pocket costs directly related to the domain name. (McDonell Decl., Exh. 11 at Response to Request to Admit No. 19)

30. The domain name <rossperot.com> was transferred to Perot Systems Corporation as a result of the arbitration. (McDonell Decl., Exh. 10)

31. One or both of the defendants has registered the domain names <jaguar.com> and <jag.com>. (McDonell Decl., Exh. 12)

32. In *Jaguar Cars Ltd. et al. v. Steven Weber*, Civil Action No. 98–70623, in the United States District Court for the Eastern District of Michigan, one or both of the defendants was sued based on the domain names <jaguar.com> and <jag.com>. (McDonell Decl., Exh. 14 at § 00083)

33. One or both of the defendants transferred the domain names <jaguar.com> and <jag.com> to Jaguar Cars Ltd. (McDonell Decl., Exh. 10)

34. One or both of the defendants has registered the domain name <franklinmint.com>. (McDonell Decl., Exh. 10)

35. In *Franklin Mint Company v. Steven Weber*, Civil Action No. 98–CV–3011, suit was brought against one or both of the defendants in the United States District Court for the Eastern District of Pennsylvania by the Franklin Mint Company over the use of the domain name <franklinmint.com>. (McDonell Decl., Exh. 14 at § 00083–84)

36. One or both of the defendants transferred the domain name <franklinmint.com> to Franklin Mint Company. (McDonell Decl., Exh. 10)

37. One or both of the defendants has registered the domain name <claridge.com>. (McDonell Decl., Exh. 10)

38. In *The Claridge At Park Plaza, Inc. v. Steven Weber*, Civil Action No. 98–CV–3757, suit was brought in the United States District Court for the Eastern District of Pennsylvania by The Claridge At Park Plaza, Inc. arising out of the registration by one or both of the defendants of the domain name <claridge.com>. (McDonell Decl., Exh. 14 at § 00084)

39. One or both of the defendants transferred the domain name <claridge.com> to the Claridge Casino & Hotel. (McDonell Decl., Exh. 10)

40. One or both of the defendants has registered the domain name <sadd.com>. (McDonell Decl., Exh. 10)

41. SADD, Inc. brought an arbitration against the registration of <sadd.com> by one or both of the defendants and the arbitrator ruled in favor of SADD, Inc. (McDonell Decl., Exh. 14)

42. One or both of the defendants transferred the domain name <sadd.com> to SADD, Inc. (McDonell Decl., Exh. 10)

43. When registering a domain name, an individual the registrant enters into a contractual agreement with a registrar. (*Network Solutions, Inc. v. Umbro, Intl. Inc.*, 259 Va.759, 529 S.E.2d 80, 86 (2000))

44. As part of that contractual agreement, the registrar agrees to allow the registrant the exclusive use of a specific domain name for a certain period of time. (*Network Solutions, Inc. v. Umbro, Int'l. Inc.*, 259 Va.759, 529 S.E.2d 80, 86 (2000))

45. In exchange for the right to use the domain name for a fixed period, the registrant pays a certain sum of money and agrees to certain other conditions, which vary depending upon the registrar involved. (McDonell Decl., Exhs. 21, 23)

46. In March 2000, the named registrant for <schmidheiny.com> was "Weber Net" and the registrar was Network Solutions, Inc. (NSI). (McDonell Decl., Exh. 6)

47. In June 2000, the domain name <schmidheiny.com> was transferred from NSI, a U.S. domain name registrar, to a new registrar, Internet Names Worldwide ("INWW"), a division of Melbourne IT Ltd. (McDonell Decl., Exh. 19)

48. The named registrant for <schmidheiny.com> was changed in or after June 2000 to defendant Famology.com, Inc. (McDonell Decl., Exh. 9 at Response to Interrog. No. 5)

49. Defendant Famology.com, Inc. and Weber Net are not the same entity. (McDonell Decl., Exh. 11 at ¶ 11)

50. One or both of the defendants paid a fee and entered into a contract—a "Registration agreement" with INWW. (McDonell Decl., Exh. 23 at § 00146)

51. In exchange for paying a fee and entering into the Registration agreement, one or both of the defendants was permitted to transfer the <schmidheiny.com> domain name to INWW and to reserve the <schmidheiny.com> domain name for an additional year past its original February 2001 expiration date. (McDonell Decl., Exh. 23 at § 00146)

52. After the <schmidheiny.com> domain name was transferred to INWW, the new expiration date for <schmidheiny.com> became February 28, 2002. (McDonell Decl., Exh. 29)

53. On or around May 24, 2001, one or both of the defendants paid INWW a fee to reserve to Famology.com, Inc. the exclusive use of the <schmidheiny.com> domain name for an additional one-year period. (McDonell Decl., Exh. 28)

54. On the INWW website, INWW provides information about the registrant of domain names that are registered through INWW. (McDonell Decl., Exh. 7)

55. As of July 25, 2001, on the INWW website, INWW listed the "Registration Date" of <schmidheiny.com> as June 22, 2000. (McDonell Decl., Exh. 7)

56. Pursuant to the Terms and Conditions of NSI's "Registrant Name Change Agreement," the New Registrant enters into an agreement "for the registration" of the domain name and the effective date of that "registration" is the date of NSI's transmission of an acknowledgment to the New Registrant. (McDonell Decl., Exh. 22, at § 00117)

57. On the DirectNic website, the registrar gives instructions for transferring domain names to DirectNic from another registrar. As part of those instructions, the DirectNic website states: "At this time, your transferred domains can only be registered for one year. At the time of renewal you can change the number of years you have your domains registered." (*See* http://www.directnic.com/help/faq/index. php?question_id=72 & topic_id =5)

58. In November 2000, Mr. Weber sent an email with the following text to Ms.

**618**

Evelyn Braun, Mr. Schmidheiny's assistant:

Hello,

I am sending this email to those who have shown an interest in the purchase of the Schmidheiny.com Domain Name. I recently received an offer of $1,000,000 for this domain name. I don't know why those people want this name or why they made such an elaborate offer but I certainly plan on accepting this offer regardless of their intent. I told them once the name was not for sale and they then made this offer. I believe that they are sincere though I have no idea why they want the name so badly. But for $1,000,000, I am not going to question their motives!

I figured I owened [*sic*] it to myself and to those who were interested in the name to allow you an opportunity to better this offer. I have no intentions on [*sic*] involving anyone in a bidding war. The people who made this offer clearly stated that their offer price was firm. Therefore, if anyone is willing and/or able to make an offer of $1.1 million I will certainly sell to you instead. If anyone is interested, please reply as soon as possible. Thank you for your time.

Sincerely,

Steve Weber

(215) 513–1788

(McDonell Decl., Exh. 25; Exh. 11 at ¶ 2)

59. Defendants did not produce in discovery a copy of the $1,000,000 offer referenced in Mr. Weber's e-mail to Ms. Braun.

60. Mr. Weber uses the Afternic.com domain name auction website under the username "santa." (McDonell Decl., Exh. 11 at ¶ 18)

61. On or about November 28, 2000, the <schmidheiny.com> domain name was listed on the Afternic.com website with the "seller" designated as "santa" and the "minimum offer" designated as $1,100,000. (McDonell Decl., Exh. 26)

62. According to the Afternic.com User Agreement, when a registrant lists a domain name for auction or sale he or she makes "a binding offer for sale that cannot be withdrawn." (McDonell Reply Decl., Exh. 1 at ¶ 12)

63. One or both of the defendants would have achieved a profit if he/it sold the <schmidheiny.com> domain name for $1 million or more. (McDonell Decl., Exh. 12 at Response to Interrog. No. 10)

64. Defendants did not produce any evidence in discovery that anyone with the Schmidheiny name has actually used any services that defendants provide at <schmidheiny.com>. (McDonell Decl., Exh. 9 at Response to Interrog. No. 8)

65. The Yahoo! search database of telephone directories contains no entries in the United States for the surname "Schmidheiny." (McDonell Decl., Exh. 5 at § 00149)

66. Armand Christopher has registered the domain names <cybersquatters.com> and <cyberbullies.com> and operated websites connected with those domain names. (McDonell Reply Decl., Exhs. 5–8) On the top of each of those websites is the heading "CYBERSQUATTERS.COM" and the text "PROTECT YOUR RIGHTS!" (McDonell Decl., Exhs. 7, 8)

67. One or both of the defendants has registered the following domain names. These domain names are identical to the surnames of individuals who have been ranked among the world' wealthiest individuals by *Forbes* magazine. The individuals on the *Forbes* list are indicated next to the domain names below.

| *Domain Name* | *Individual* |
|---|---|
| \<adelson.com\> | Sheldon Adelson |
| \<alhariri.com\>/\<al-hariri.com\> | Rafik Al–Hariri |
| \<alkharafi.com\>/\<al-kharafi.com\> | Nassir Al–Kharafi |
| \<aramburuzabala.com\> | Maria Aramburuzabala |
| \<arnault.com\> | Bernard Arnault |
| \<arrillaga.com\> | John Arrillaga |
| \<bailleres.org\> | Alberto Bailleres |
| \<beisheim.com\> | Otto Beisheim |
| \<busujima.com\> | Kunio Busujima |
| \<dedman.com\> | Robert Henry Dedman |
| \<fentener\> | John A. Fentener van Vlissingen |
| \<frist.com\> | Thomas F. Frist, Jr. |
| \<gonda.com\> | Louis Gonda and Leslie Gonda |
| \<haefner.com\> | Walter Haefner |
| \<haub.com\> | Erivan Haub |
| \<hopp.com\> | Dietmar Hopp |
| \<itoyama.com\> | Eitaro Itoyama |
| \<jannard.com\> | Jim Jannard |
| \<kamprad.com\> | Ingvar Kamprad |
| \<kerkorian.com\> | Kirk Kerkorian |
| \<khosla.org\> | Vinad Khosla |
| \<koplowitz.com\> | Alicia Koplowitz and Esther Koplowitz |
| \<kovner.net\>/\<kovner.org\> | Bruce Kovner |
| \<kriens.org\> | Scott Kriens |
| \<kristiansen.com\> | Kjeld Kirk Kristiansen |
| \<kroenke.com\> | Ann Walton Kroenke |
| \<kudelski.org\> | Andre Kudelski |
| \<kuok.com\> | Robert Kuok |
| \<kwek.com\> | Leng Beng Kwek |
| \<luksic.com\> | Andronico Luksic |
| \<mathile.com\> | Clayton L. Mathile |
| \<merckle.net\> | Adolf Merckle |
| \<murdock.com\> | David Howard Murdock |
| \<naify.com\> | Robert Allen Naify |
| \<nambu.com\> | Yasuyuki Nambu |
| \<omidyar.com\> | Pierre M. Omidyar |
| \<pinault.com\> | Francois Pinault |
| \<potanin.com\> | Vladimir Potanin |
| \<rales.com\> | Mitchell Rales and Steven Rales |
| \<sahenk.com\> | Ferit Sahenk |
| \<samueli.com\> | Henry Samueli |
| \<schmidheiny.com\> | Stephan Schmidheiny |
| \<schoerghuber.com\> | Stefan Schoerghuber |
| \<skoll.com\> | Jeff Skoll |
| \<sobrato.net\> | John Albert Sobrato |
| \<takizaki.com\> | Takernitsu Takizaki |
| \<tschira.com\> | Klaus Tschira |
| \<tsutsumi.com\> | Yoshiaki Tsutsumi |

| | |
|---|---|
| \<ueltschi.com\> | Albert Lee Ueltschi |
| \<van-beuren.com\> | Hope Hill Van Beuren |
| \<vonfinck.com\> | August von Finck |
| \<von-holtzbrinck.com\> | Dieter von Holtzbrinck |
| \<waitt.com\> | Theodore Waitt and Norman Waitt |
| \<winnick.com\> | Gary Winnick |

68. Defendants have no connection with any of the individuals listed above who have been ranked among the world' wealthiest individuals by *Forbes* magazine, including Mr. Schmidheiny.

69. The domain name schmidheiny.com was first registered on February 28, 1999, before the enactment of 15 USC 1129.

70. The only registrar of dot com domain names that existed at the time 15 USC 1129 was passed was Network Solutions Inc.

71. Plaintiff made no offer to purchase the domain name schmidheiny.com before he filed the instant case.

72. There are towns in Kansas, Michigan, Texas, and Wyoming named Moran.

73. On or about June 15, 2000, Weber received an email message from Evelyn Braun stating, in part, "Stephan Schmidheiny would be interested in the domain name schmidheiny.com . . . ."

74. Weber contacted Ms. Braun and indicated that the name was "not available for transfer."

75. There are about 95 individuals with the surname Schmidheiny in Switzerland.

76. The following domain names are owned by Plaintiff, or his brother, or one of their companies: schmidheiny.net, schmidheiny.org, stephan-schmidheiny.com, stephan-schmidheiny.net, stephan-schmidheiny.com, stephanschmidheiny.com, stephanschmidheiny.net, stephanschmidheiny.org, thschmidheiny.com, th-schmidheiny.net, th-schmidheiny.org, thomas-schmidheiny.com, thomas-schmidheiny.net, thomas-schmidheiny.org, thomasschmi-dheiny.com, thomasschmidheiny.net, thomasschmidheiny.org, thschmidheiny.com, thschmidheiny.net, thschmidheiny.org.

77. Weber has registered hundreds of domain names which primarily fall into four different categories. Names of famous individuals such as Ross Perot. Generic words such as back.com, gymnasium.com, hypnotists.com, jets.com and others. Weber also registered hundreds of surnames including Gould.com, Smith.ly, Moran.com and numerous geographic descriptions.

78. Weber does not own weber.com.

79. Famology.com, Inc. currently offers web based email services using hundreds of different domain names which incorporate surnames. Anyone on the planet can obtain a free email address at schmidheiny.com through Famology.com Inc.

80. The Famology.com website currently provides links to genealogy web sites, links to family oriented web sites, a free message posting service, and a free email reminder service.

81. Weber currently operates a website about Mother Teresa at *http://www.motherteresa.com/*.

82. Weber donated four Princess Diana domain names he owned to the Diana Foundation.

83. The website NetIdentity.com (formerly MailBank.com) holds over 15,000 surname domain names, and uses them to provide email services.

84. Charlotte Weber is on the Forbes list of wealthiest individuals but Steven

Weber is not. Their last names are identical.

85. Famology.com Inc owns the following domain names which do not represent individuals on the Forbes list of wealthiest individuals:

3DWORLDS.COM
3H.COM
ABDUL.NET
ABDUL.ORG
ABODEOFPEACE.COM
ACUPUNCTURISTS.COM
ADAMS.WS
AGORDO.ORG
ALBRIGHTSVILLE.COM
ALDERFER.COM
ALESSANDRINI.ORG
AL–MASRI.COM
ALMASRI.NET
AL–MASRI.NET
ALMUHTADEEBILLAH.COM
AMERICANJOURNAL.COM
AMERICAN–JOURNAL.COM
ANTIPOLO.COM
ARCORE.ORG
ARDILA.COM
ARMAGH.COM
AUCTIONCHAT.NET
BACK.COM
BADHOMBURG.ORG
BAINUM.COM
BAKRIE.COM
BAL–HARBOR.NET
BAL–HARBOR.ORG
BANDARSERIBEGAWAN.COM
BANGAR.COM
BARNDT.COM
BARRINGTON–HILLS.COM
BARRINGTONHILLS.NET
BARRINGTONHILLS.ORG
BAZELON.COM
BELAIT.COM
BENALIA.COM
BENTONVILLE.ORG
BERAKAS.COM
BIDIS.COM
BILLCOSBY.COM
BILL–COSBY.COM
BILLUND.ORG
BLOOMFIELD–HILLS.ORG
BOLER.COM
BONNE.COM
BOUDJAKDJI.COM
BRAINTEASERS.COM
BREAST–CANCER.COM
BREAST–CANCER.ORG
BRENNINKMEYER.COM
BRITISHCOLUMBIA.ORG
BRITISH–COLUMBIA.ORG
BRUMAIL.COM
BRUNEII.COM
BRUNEIAN.COM
BRUNEIAN.NET
BRUNEIAN.ORG
BRUNEIANS.COM
BRUNEIANS.NET
BRUNEIANS.ORG
BRUNEIDARUSSALAM.COM
BRUNEIDARUSSALAM.NET
BRUNEIDARUSSALAM.ORG
BRUNEIINTERNET.COM
BRUSEARCH.COM
CAMDENCOUNTY.COM
CARELL.COM
CARSEY.COM
CARTER.WS
CASCINA.COM
CASKET.COM
CATHOLICS.NET
CATHOLICS.ORG
CHANUKAH.NET
CHANUKAH.ORG
CHARLIZE.COM
CHERNICK.COM
CHOWDRY.NET

CHOWDRY.ORG
CLEANSERS.COM
CODESIGNS.COM
CONSENT.ORG
CROSSMANN.COM
CROWN–POINT.NET
CROWN–POINT.ORG
CUCME.COM
CYBERLADY.COM
DABBIERE.COM
DADE.COM
DADECOUNTY.COM
DADE–COUNTY.COM
DAKOTA–DUNES.COM
DAKOTADUNES.NET
DAKOTADUNES.ORG
DAWSONCREEK.COM
DAWSON–CREEK.COM
DEBROE.COM
DEFFOREY.COM
DELASKI.COM
DEMOULAS.COM
DENEME.COM
DENOBLE.ORG
DETERS.COM
DEUTSCHE.NET
DEUTSCHE.ORG
DEXMIER.COM
DKMB.COM
DOLPHINS.COM
DOMAINS4SALE.NET
DOMAINSALE.COM
DOMAINWANTEDADS.COM
DOMMERMUTH.COM
DONSKY.COM
DOWNTOWNER.COM
DRESHER.COM
DUCHOSSOIS.COM
DUMPED.COM
EAFE.COM
EASTER.NET
EAU–CLAIRE.ORG
EBBERS.COM
ELKFORD.COM

ENB.COM
ENB.NET
ENB.ORG
E–NEWS.COM
ENTERTAINMENT.CC
ENVESTMENT.COM
ENVESTMENTS.COM
ENVESTOR.COM
ENVESTORS.COM
E–VESTING.COM
EVESTMENT.COM
E–VESTMENT.COM
EVESTMENTS.COM
E–VESTMENTS.COM
EVESTOR.COM
E–VESTOR.COM
FAHIM.COM
FAMILYAFFAIR.COM
FAMOLOGY.COM
FAMOLOGY.NET
FAMOLOGY.ORG
FATHERKNOWSBEST.COM
FIRESTEIN.COM
FLB.COM
GADONG.COM
GARCIA.WS
GARIS.COM
GLICKSON.COM
GMAONLINE.COM
GOIZUETA.COM
GOKONGWEI.COM
GOLDSCHMEDING.COM
GOSSIP.NET
GRAZER.COM
GREENWOOD–VILLAGE.COM
GROSSEPOINTESHORES.NET
GWYNEDD.COM
GYMNASIUM.COM
GYMNASIUMS.COM
HAEBLER.COM
HAIFU.COM

HALEWOOD.COM
HAMADAYAMA.ORG
HANIEL.COM
HANUKKAH.ORG
HASCOE.COM
HASSANAL.COM
HASSANALBOLKIAH.COM
HASSANAL–BOLKIAH.COM
HETGOOI.NET
HETGOOI.ORG
HHH.COM
HISROYALHIGHNESS.COM
HMSULTAN.COM
HMSULTANOFBRUNEI.COM
HNEWS.COM
HOME–VIDEOS.COM
HONICKMAN.NET
HONICKMAN.ORG
HORSEHEAD.COM
HUBB.COM
HUSSEIN.ORG
HYPNOTISTS.COM
IBM
IBS.NET
ILITCH.COM
INEWS.COM
I–NEWS.COM
INEWSXCHNAGE.COM
INVERMERE.COM
ISTANANURULIMAN.COM
ITAIL.COM
JABATAN.COM
JERMOLUK.COM
JERUSALEM.NET
JETS.COM
JFKJR.NET
JFKJUNIOR.COM
J–J.COM
JOAN.COM
JUST5.COM
KAPHAN.COM
KARMANOS.COM
KATZENBERG.COM
KERRISDALE.COM

KIDCO.ORG
KIDRO.COM
KITIMAT.COM
K–K.COM
KLAMATH–FALLS.NET
KLAMATH–FALLS.ORG
KOMANSKY.COM
KOSHLAND.COM
KRAUZE.COM
KRETEKS.COM
KUNZELSAU.COM
KUNZELSAU.NET
KUNZELSAU.ORG
KUSHMAN.COM
LAHAINER.COM
LAWE.COM
LAWSOCIETY.COM
LEEKS.COM
LEPRINO.COM
LESLEY.COM
LEWIS.WS
LIEM.COM
LIEMANDT.COM
LIMBANG.COM
LITWIN.COM
LIVE.CC
LIVEINTERNET.COM
LIVEWWW.COM
LNEWS.COM
LOANANDHELP.COM
LOANESCORT.COM
LOANSPELL.COM
LUMBY.COM
MACARTHURPARK.COM
MACARTHUR–PARK.COM
MACRI.COM
MAGERKO.COM
MAKHTOUM.COM
MALAWIAN.COM
MANDM.COM
MANOOGIAN.COM

MARLETTE.COM
MARPOLE.COM
MARTIN.WS
MARWICK.COM
MASENO.COM
MASHOUF.COM
MAUNA.COM
MCVANEY.ORG
MEEGO.COM
MEGGEN.NET
MEGGEN.ORG
MEGSI.COM
MELROSE–PARK.COM
MERCERISLAND.NET
MERCER–ISLAND.ORG
METRODADE.COM
MEXICOCITY.ORG
MIDLANTIC.COM
MIDLANTIC.COM
MILLINGTON.COM
MNM.COM
MOHAMMAD.NET
MOHAMMAD.ORG
MOLEY.COM
MOMCO.COM
MORANS.NET
MORRILTON.ORG
MOTHERTERESA.COM
MOTHER–TERESA.COM
MOTHERTERESA.NET
MOTHER–TERESA.NET
MOTHERTERESA.ORG
MOTHER–TERESA.ORG
MOUNTKISCO.NET
MOUNT–KISCO.NET
MUHTADEE.COM
MUHTADEEBILLAH.COM
MUHTADEE–BILLAH.COM
NADING.COM
NAHYAN.COM
NANNY–CAM.COM
NEGARABRUNEIDARUSSA-
LAM.COM
NEILSON.WS

NETLINGS.COM
NEW–ALBANY.NET
NEW–ALBANY.ORG
NEWTON–CENTRE.COM
NEWTONCENTRE.NET
NEWTONCENTRE.ORG
NEWWESTMINSTER.COM
NEW–WESTMINSTER.COM
NIGHAM.COM
NORTHERNVIRGINIA.COM
NORTHVIRGINIA.COM
NORWEGIANS.COM
NOTOVIOLENCE.COM
NTV.COM
NTW.COM
NTW.ORG
NURMBERG.COM
NURMBERG.NET
NURMBERG.ORG
NVIRGINIA.COM
NYCITY.ORG
NY–NY.NET
NYNY.ORG
OMAIZA.COM
OMAIZA.NET
OMAIZA.ORG
ONB.COM
OPPERMAN.COM
OSANO.COM
OSHIMA.COM
OWINGS–MILLS.COM
OWINGSMILLS.ORG
OYSTER–BAY.NET
OYSTER–BAY.ORG
PADIAN.COM
PARENTGARTEN.COM
PCCC.COM
PERENCHIO.COM
PERUNDING.COM
PETAR.COM
PETSURF.NET

PIECH.COM
PINEAPPLEISLAND.COM
PLASTIC101.COM
PORTOLA–VALLEY.COM
PRESLEY.ORG
PRINCEJEFRI.COM
PRINCEOFWALES.COM
PRINCESS–DI.COM
PRINCESSDI.NET
PRIT.COM
PRITZ.COM
PRITZ.COM
QANDQ.COM
Q–Q.COM
QUADRACCI.COM
RAMAPHOSA.COM
RASHMAN.COM
READYWEAR.COM
RESERVES.COM
RNR.COM
ROBINSIN.WS
RODRIGUEZ.WS
ROKKE.COM
ROSKI.COM
ROTHAUG.COM
RYSZARD.COM
SABLI.COM
SADULPUR.NET
SADULPUR.ORG
SAINTMARYSPOINT.COM
SANDB.COM
SANDSTONE.COM
SAN–MATEO.ORG
SAVINGSNLOAN.COM
SCANNERS.NET
SCIFRES.NET
SCIFRES.ORG
SEAGAMES.ORG
SEMAUN.COM
SENGKURONG.COM
SERICEL.COM
SERICELS.COM
SEYDOUX.COM
SHAREWAREFIND.COM

SHERMAN–OAKS.COM
SHORT–HILLS.ORG
SHOULD.COM
SHUNTAK.NET
SHUNTAK.ORG
SIMONYI.COM
SIPC.COM
SKELTON.COM
SNP500.COM
SPARWOOD.COM
SPORTUTILITYVEHICLE.COM
SSEA.COM
STEINBRUCH.COM
STMARYSPOINT.COM
STOCK–BROKERS.COM
STRATHAM.NET
STRATHAM.ORG
SUBOTNICK.COM
SULTANBRUNEI.COM
SULTANOFBRUNEI.COM
SULTANOFBRUNEI.NET
SUNDAE.COM
SUSKIND.COM
SYNAGOGUE.NET
SZLAM.COM
TAPPEN.COM
TECHNOLOGYSTOCK.COM
TEMBURONG.COM
TEWKESBURY.COM
THELAWS.COM
THEWES.COM
TNA.COM
TOPFER.COM
TORESCO.COM
TOTCO.COM
TOYODA.COM
TRACINDA.COM
TSTOCK.COM
TUTONG.COM
TVBOOK.COM
UANDU.COM

UIRYUNG.COM
UIRYUNG.NET
UIRYUNG.ORG
UNITED–KINGDOM.ORG
UNSTONE.COM
UNU.COM
U–U.COM
UUA.COM
VACATIONFAMILY.COM
VALBY.COM
VERGNES.COM
VERNON–HILLS.COM
VICTORIA.ORG
VINCIARELLI.COM
VIRTUALESTATE.COM
WALKER.WS
WAWASAN.COM
WBNEWS.COM
WEBERNET.COM
WEBERTEC.COM
WEBERTECHNOLOGIES.COM
WEBER–TECHNOLOGIES.COM
WEISGLASS.COM
WIDJAJA.COM
WILKENSON.COM
WILLIAMSLAKE.COM
WILLIS.ORG
WILLMOTH.COM
WINLUCK.COM
WIXOM.COM
WONOWIDJOJO.COM
WORKWATER.COM
WRIGHT.WS
WWWLIVE.COM
XANDX.COM
YAYASAN.COM
YAYASAN.NET
YAYASAN.ORG
YESTOLOVE.COM
YNY.COM
YTL.COM
Y–Y.COM
ZANDZ.COM
ZNB.COM

ZNZ.COM

ZWEBEN.NET

ZWEBEN.ORG

86. Network Solutions currently charges $29.00 for domain name registrations. (See http://www.networksolutions.com).

87. The domain name schmidheiny.com is currently registered with the registrar DirectNic. (See http://www.directnic.com/whois/?query=schmidheiny.com).

88. According to the whois record at DirectNic, the "creation date" for the domain name schmidheiny.com is 28–Feb–1999.

89. According to the Internet Names Worldwide web site they currently charge $35.00 per year per domain name for registrations and renewals. (See pricing button at http://inww.com).

90. According to the DirectNic web site they currently charge $15.00 per year for domain name registrations and renewals (See *http://www.directnic.com/features/prices.*)

DISCUSSION

The ACPA contains a prohibition on the use of personal names in domain names. 15 U.S.C. § 1129(1)(A) provides:

Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.

Subsection (B) provides an exception for those who register personal names if such name is used in, affiliated with, or related to a work of authorship protected as a copyright under Title 17 of the U.S.Code.

Section 1129(2) provides the remedies available for violation of ACPA:

> In any civil action brought under paragraph (1), a court may award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff. The court may also, in its discretion, award costs and attorneys fees to the prevailing party.

15 U.S.C. § 1129(2).

■ The elements of the cause of action established by the statute are straightforward. A person is liable under ACPA if he (1) registers a domain name; (2) that consists of the name of another living person (or one that is substantially and confusingly similar); (3) without that person's consent; (4) with the intent to profit from selling that domain name to the person or a third party. The stipulated facts demonstrate that plaintiff has satisfied his burden of demonstrating each of these elements. Defendants registered the <schmidheiny.com> domain name. That domain name consists of the name of Stephan Schmidheiny, a living person. Plaintiff did not consent to the registration. Finally, the stipulation establishes by a preponderance of the evidence that defendants specifically intended to profit from the sale of the domain name to the plaintiff. That intent is established by defendants' previous course of conduct of registering domain names of wealthy individuals and then selling or attempting to sell those domain names to those persons or others. That intent is also established by defendants' e-mails to the plaintiff offering to sell the domain name for $1.1 million, while falsely implying that others were in competition with plaintiff to purchase the domain name.

Defendants argue that summary judgment is not appropriate on the issue of specific intent. Specifically, they assert that the offer to sell the domain name in November 2000 is not necessarily probative of their intent to profit from the registration of the domain name in June 2000, arguing that a jury could find based upon the defendants' business plan to provide e-mail addresses that the intent at the time of registration was not to sell, but to develop the domain name. Given the content of the stipulation, we cannot agree.

■ In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (citing *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994)). As to materiality, the substantive law will identify which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250, 106 S.Ct. 2505.

On a motion for summary judgment, the facts should be reviewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact and avoid summary judg-

ment. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1373 (3d Cir.1992).

Defendants' argument that the offer to sell the domain name in November 2000 is not necessarily probative of their intent to profit from the registration of the domain name in June 2000—because a jury could find based upon the defendants' business plan to provide e-mail addresses that the intent at the time of registration was not to sell, but to develop the domain name—strikes the court as a textbook example of the type of "metaphysical doubt" described by *Matsushita.* The stipulation contains substantial evidence of defendants' specific intent to profit from the registration of the domain name. This includes evidence that they are in the business of buying and selling domain names; have registered numerous domain names that include trademarked names, names of celebrities, and names of wealthy persons; have registered domain names of numerous persons on the *Forbes* list while having no apparent connection to these names; have profited from the sales of domain names to others on the list; the time lapse between the registration in June 2000 and the offer of sale in November 2000, was relatively brief; defendants falsely implied that plaintiff was in competition with others in the bidding for the domain name; and, at the same time they offered the domain name to plaintiff, defendants also put the name up for auction at a price that had no reasonable connection to its value to anyone other than the plaintiff. Finally, defendants have come forward with no evidence to raise a jury issue on their claim that they intended to "develop" the web site. The fact that they offer a free e-mail address to anyone at the website, does not negate the evidence of specific intent to sell the site for profit to the plaintiff.

Accordingly, we find that plaintiff is entitled to summary judgment, injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff, and constitutes the prevailing party for the purposes of awarding costs and attorneys fees.

### *ORDER*

The renewed motion of Stephan Schmidheiny for summary judgment (# 40) is GRANTED.

Judgment on the merits is entered in favor of Stephan Schmidheiny and against Steven Weber d/b/a/ Domainsale and Famology.com, Inc. and Famology.com, Inc.

Defendants Steven Weber d/b/a/ Domainsale and Famology.com, Inc. and Famology.com, Inc. are ORDERED to transfer the domain name <schmidheiny.com.> to the plaintiff Stephan Schmidheiny and are ENJOINED from registering a domain name substantially or confusingly similar to the <schmidheiny.com> domain name in the future.

Plaintiff Stephan Schmidheiny is DIRECTED to file an application for costs and attorney's fees within twenty days.

IT IS SO ORDERED.