Edward M. ZINNER, Plaintiff,

v.

Richard P. OLENYCH and Lone Tree Printing, LLC, Defendants.

Civil Action No. 2:14cv163.

United States District Court,
E.D. Virginia,
Norfolk Division.

Signed June 4, 2015.

Louis Napoleon Joynes, II, The Joynes & Gaidies Law Group PC, Virginia Beach, VA, for Plaintiff.

Linda Wong, Mark William Thompson, Wong Fleming PC, Princeton, NJ, Thomas Averill Duckenfield, Wong Fleming, Washington, DC, for Defendants.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on a Motion for Summary Judgment, ECF No. 26, filed by Richard P. Olenych ("Olenych") and Lone Tree Printing, LLC ("Lone Tree" and, collectively with Olenych, "Defendants"). After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. civ. P. 78(b); E.D. Va. Loc. R. 7(J).

## I. FACTUAL AND PROCEDURAL BACKGROUND [1]

Edward Zinner ("Plaintiff" or "Zinner") brought this Lanham Act action against Defendants based on Defendants' use of the domain name edzinner.com. Plaintiff is a musician who has performed live music as a member of several bands and also recorded music with other artists. In addition, Plaintiff is the owner or part-owner of Ocean Equity Group ("OEG") and Ocean Equity Payment Solutions, LLC ("OEPS"). Also relevant to this dispute, on March 13, 1995, in the United States District Court for the Eastern District of Pennsylvania, Plaintiff pleaded guilty to racketeering charges arising from his operation of a multiple employer welfare arrangement. Plaintiff's conviction resulted in a term of imprisonment and substantial restitution judgment.

Olenych is the principal owner of Lone Tree, a printing company. Olenych is also the author of one self-published novel, *Joe Sales.* Beginning in 2010, Lone Tree provided printing services to Plaintiff's companies, OEG and OEPS.

In 2012, as a favor to Olenych, OEPS hired Olenych's son, Perry Olenych, to work as an independent contractor. OEG also employed Perry Olenych as an employee beginning in January 2013. In March 2013, Perry Olenych resigned from OEPS and OEG and, along with another former OEPS employee, Doug Wilson, formed Ally Merchant Services, LLC ("Ally"). Olenych is a minority shareholder of Ally and has very little involvement in its day-to-day operations. Once Plaintiff learned of Ally, Plaintiff told Olenych that Perry Olenych and Doug Wilson could not use their knowledge of the OEPS and OEG customer lists to take Plaintiff's clients.

On August 29, 2013, OEG and OEPS sued Perry Olenych and Doug Wilson in the Circuit Court for the City of Virginia Beach. OEG and OEPS asserted causes of action for breach of contract and tortious interference with business relations.

In September or October 2013, Olenych began drafting a fictionalized novel, "EZ the Hard Way," about his relationship with Plaintiff. Olenych based "EZ the Hard Way" on his experiences with Plaintiff. The main character of Olenych's draft novel is "Ed Zinner." According to Olenych, although the characters in the novel are not Plaintiff's family members, it is not a coincidence that the fictionalized "Ed Zinner's" wife and children have the same names as Plaintiff's wife and children. In a draft of the novel, "Joe," the owner of a printing company that performed work for "Ed," plots to take retribution against "Ed" for interfering with "Joe's" family.

---

1. Any genuinely disputed facts are set forth in a light most favorable to Plaintiff, the non-moving party. *Tolan v. Cotton,* —— U.S. ——, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (per curiam).

*See* Pl.'s Resp. Opp'n Mot. for Summ. J. Ex. K, ECF No. 27–15. As part of his retaliatory scheme, "Joe" seeks to inflict "total humiliation" on "Edward W. Zinner" by exposing the truth about "Ed" on the internet, television, newspaper, and radio. *See id.* "EZ the Hard Way" remains in draft form, is not ready for publication, and has not been shown to anyone other than in connection with this matter.

On March 6, 2014, Defendants—without consent to use Plaintiff's name as a domain name—purchased the domain name "edzinner.com" from HostPapa, a hosting service. At that time, Defendants provided HostPapa with accurate registration information, including their name, address, and other contact information. However, to protect themselves from Plaintiff, Defendants opted to pay an additional fee for HostPapa to instruct the domain registrar, Tucows, Inc. ("Tucows") to keep Defendants' registration information private. Aside from the edzinner.com domain name, Defendants do not own any domain name with a person's name other than Olenych's own name.

The only content of the edzinner.com website was the following text:

Does history repeat itself?

It does with Ed Zinner. And that is what this page is all about.

We will review his documented statements and actions prior to his Multiple Employer Welfare Arrangement Industry or MEWA conviction. The book *"Broken Promises: Fraud by Small Business Health Insurers"* by Robert .Tillman devoted a whole chapter to Edward M. Zinner.

Here's the link:

http://books.google/com/books?id=tr9Q0 w6aX30C&pg=PA75&1pg=PA75&dq= ed+zinner+scams&source . . .

It's not only about Ed Zinner's felony conviction that we are going to review, it is his blatant lies and outrageous antics that continue today that need to be exposed. If Mr. Zinner had simply done his jail time and reformed[,] this web site would not be here. [H]e chose not to[ ].

So his past will be revealed in chronological order. We hope to demonstrate to the world that Ed Zinner has not changed or repented for his actions and continues with his old habits.

Defs.' Mot. for Summ. J. Ex. 14, ECF No. 26–16. Aside from that text, the edzinner.com website did not state that the edzinner.com domain name was available for purchase and did not provide information identifying its owners, Defendants.

On March 25, 2014, Samuel Brown—an attorney representing Plaintiff in his state-court action against Doug Wilson and Perry Olenych—emailed the edzinner.com domain registrar, Tucows. In the email, Mr. Brown demanded that Tucows provide him with the name of the domain name registrant and forward the email to the registrant. The email demanded a response from the registrant by March 28, 2014.

Tucows forwarded the email, from Mr. Brown, to Olenych. In a response email to Mr. Brown, Tucows stated that the edzinner.com domain name had enabled privacy protections. However, Tucows informed Mr. Brown that it had forwarded the email to the domain name registrant and Tucows provided Mr. Brown with a link to a form through which Mr. Brown could directly contact the registrant. Neither Mr. Brown nor Plaintiff ever attempted to use the contact form to contact the edzinner.com domain name registrant.

On the morning of March 27, 2014, Olenych told Tucows that his attorney would contact Mr. Brown by April 4, 2014. That same morning, Tucows informed Mr. Brown that the registrant's attorney would contact him by April 4, 2014. In response, Mr. Brown stated that he could not wait

that long for a response because the website was "causing serious damage and may be subject to criminal activity...." Defs.' Mot. for Summ. J. Ex. 15, ECF No. 26–17. Mr. Brown then "ask[ed] that [Tucows] reveal the source as soon as possible to avoid litigation." *Id.*

That afternoon, a representative of Tucows advised Olenych that Mr. Brown had threatened litigation against Tucows and instructed Olenych to contact Mr. Brown by the end of the day, or Tucows would remove the privacy protections on the edzinner.com domain. In response to the threat from Tucows that it would remove the privacy protection on the edzinner.com domain, Olenych altered the registration information to a fictitious name and address. On the following morning—March 28, 2014—Olenych emailed a representative of Tucows and informed her that his attorney, Justin Fernandez, would be contacting Mr. Brown that day.

On March 28, 2014, Mr. Fernandez contacted Mr. Brown. Although Mr. Brown was not available to receive his call, Mr. Fernandez left the following voicemail message:

Hi, this is attorney Justin Fernandez in Cincinnati,

Ohio. My phone number is [xxx]-[xxx]-[xxxx]. I'm call[ing] regarding the domain name edzinner.com. Uh, I'm representing a client who is interested in selling that domain name. Again, Justin Fernandez, [xxx][xxx]-[xxxx], in Cincinnati. Thank you very much, Mr. Brown. Bye, bye.

*Id.* Ex. 17, EOF No. 26–19. Mr. Brown called Mr. Fernandez in response to the voicemail message and had several conversations with Mr. Fernandez. In the conversations, Mr. Brown and Mr. Fernandez primarily discussed whether Mr. Fernandez was required to disclose the name of his client to Mr. Brown. In addition, the gist of the conversation between Mr. Fernandez and Mr. Brown was that Mr. Fernandez's client wanted to be paid for the website. Brown Dep. 50:20–21, Nov. 24, 2014, ECF No. 26–6. And "the tone of the conversation was, it would take a lot of money to pay off this mysterious owner of this website." *Id.* at 49:24–25, 50:1. That said, Mr. Fernandez never provided Mr. Brown with a specific offer to sell the website.

While events unfolded regarding the edzinner.com domain name, there was an important development in Plaintiff's state-court action. On March 31, 2014, Plaintiff filed a Third Amended Complaint, which named Olenych and Ally as defendants. Defs.' Mot. for Summ. J. Ex. 20, ECF No. 26–22.

Returning to the edzinner.com domain name dispute, on April 2, 2014, Tucows emailed Mr. Fernandez to inform him that Mr. Brown was threatening litigation against Tucows and that Tucows would remove the privacy protections from the edzinner.com domain name. Tucows then removed the privacy protections.

That same day, after Tucows had removed the privacy protections, Mr. Brown emailed Tucows to advise it that the registration information for the domain name was inaccurate. Tucows then informed Defendants that it would suspend the domain name unless Defendants corrected the domain name registration information or demonstrated that it was up to date and accurate. In response, Olenych corrected the registration information. And, on April 3, 2014, Tucows provided Mr. Brown with the corrected registration information.

Despite the controversy it generated, the edzinner.com website was short lived. The content on the website was only on the internet for several weeks in March 2014, and Olenych removed the content during that same month.

On April 2, 2014, the same day Tucows removed the privacy protection on the edzinner.com domain name, Plaintiff applied to register the mark "ED ZINNER" on the Principal Register of the United States Patent and Trademark Office ("PTO"). Defs.' Mot. for Summ. J. Ex. 20, ECF No. 26–22. On August 12, 2014, the PTO published the ED ZINNER mark for opposition. On September 5, 2014, Lone Tree filed an opposition to registration of Plaintiff's mark. *Id.* Ex. 21, ECF No. 26–23. After Plaintiff moved to dismiss the opposition, Pl.'s Resp. Opp'n Mot. for Summ. J. Ex. M, ECF No. 27–17, the PTO dismissed Lone Tree's opposition on December 4, 2014, *id.* Ex. N, ECF No. 27–18. During the pendency of this matter, on January 13, 2015, the PTO registered Plaintiff's ED ZINNER mark on the Principal Register as Reg. No. 4,670,226 and issued Plaintiff a certificate of registration.[2] The PTO did not require Plaintiff to submit proof of secondary meaning before registering the mark.

On April 21, 2014, Plaintiff filed this action against Defendants. Complaint, ECF No. 1. Plaintiff alleges two causes of action under the Anti–Cybersquatting Consumer Protection Act amendments to the Lanham Act. In Count One, Plaintiff alleges that Defendants violated 15 U.S.C. § 8131 ("section 8131") by registering Plaintiff's name as the edzinner.com domain name, without his consent, and with the specific intent to profit from such

name by selling the domain name to Plaintiff. *Id.* ¶¶ 41–43. In Count Two, Plaintiff alleges that Defendants violated 15 U.S.C. § 1125(d) ("section 1125(d)") by registering, trafficking in, and using, with the bad faith intent to profit therefrom, the domain name edzinner.com that is identical to the ED ZINNER mark. *Id.* ¶¶ 51–52. Plaintiff seeks injunctive relief, actual damages or, at his option, statutory damages, attorneys' fees, and costs.

On December 31, 2014, Defendants moved for summary judgment. Defendants contend that they are entitled to summary judgment on Count One because Plaintiff cannot demonstrate that Defendants possessed the specific intent to profit from registering the edzinner.com domain name. As to Count Two, Defendants argue that they are entitled to summary judgment because Plaintiff has failed to produce sufficient evidence to establish that he possesses a valid trademark in his name or that Defendants possessed the bad faith intent to profit from using the edzinner.com domain name. In addition, Defendants assert that they are entitled to summary judgment on the issue of damages. Regarding Count One, they contend that the Lanham Act provides no damages as a remedy for violations of section 8131. And, with respect to Count Two, Defendants argue that Plaintiff has failed to show that his personal name mark had secondary meaning or was registered with

---

**2.** On January 13, 2015, subsequent to Plaintiff's response in opposition to Defendants' motion for summary judgment, the PTO registered the Ed Zinner mark. ED ZINNER, Registration No. 4,670,226. Plaintiff did not apprise the Court of such registration, but Plaintiff referenced his application for registration in the Complaint and noted the ongoing registration proceedings in his opposition to the instant motion. *See* Compl. ¶ 6; Pl.'s Resp. Opp'n Mot. for Summ. J. at 25. The Court takes judicial notice of the issuance of the certificate of registration. *See Au–Tomo-*

*tive Gold, Inc. v. Volkswagen of Am., Inc.,* 457 F.3d 1062, 1064 n. 2 (9th Cir.2006) (noting that registrations were pending during the proceedings in the district court and taking judicial notice of the issuance of such registrations); *Duluth News–Tribune, a Div. of Nw. Publ'ns, Inc. v. Mesabi Publ'g Co.,* 84 F.3d 1093, 1096 n. 2 (8th Cir.1996) (same); *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J.,* 894 F.Supp.2d 288, 301 n. 6 (S.D.N.Y.2012) (taking judicial notice of trademark registration).

the PTO prior to Defendants' registration of the domain name. On January 12, 2015, Plaintiff filed his response in opposition to Defendants' motion. Pl.'s Resp. Opp'n Mot. for Summ. J., EOF No. 27. On January 15, 2015, Defendants filed their reply in support of their motion, and raised a new argument with respect to damages, namely, that Plaintiff has failed to produce any evidence that he suffered damages from Defendants' alleged cybersquatting violations. Defs.' Reply Supp. Mot. for Summ. J. at 17–20, ECF No. 28. On that same day, Defendants moved to strike certain exhibits attached to Plaintiff's response in opposition to Defendants' motion, including an affidavit of Plaintiff. Defs.' Mot. to Strike, ECF No. 30. By Order of February 6, 2015, the Court struck such exhibits, but permitted Plaintiff to file another affidavit in opposition to Defendants' motion. ECF No. 45. After Plaintiff filed a second affidavit, Defendants again objected to the sufficiency of such affidavit. Defs.' Objections to Pl.'s Aff., ECF No. 52. The Court resolved such objections by Order of March 16, 2015. ECF No. 53. Therefore, the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit," and a dispute is "genuine" if "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

If a movant has properly advanced evidence supporting entry of summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits, sworn statements, or other materials that illustrate a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In doing so, the judge must construe the facts and all "justifiable inferences" in the light most favorable to the non-moving party, and the judge may not make credibility determinations. *Id.* at 255, 106 S.Ct. 2505; *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 568 (4th Cir.2015).

## III. DISCUSSION

As noted above, Defendants seek summary judgment on Plaintiff's section 8131 claim and section 1125(d) claim, and on the issue of damages with respect to each claim. In light of the analytical overlap between determining whether a Plaintiff has demonstrated a "bad faith intent to profit," for section 1125(d) purposes, and a "specific intent to profit," for section 8131 purposes, first, the Court will consider Plaintiff's section 1125(d) claim. Then, the Court will consider, in turn, Plaintiff's section 8131 claim and the issue of damages.

### A. Plaintiff's Section 1125(d) Claim

The ACPA creates a cause of action against persons who engage in "cybersquatting." "Cybersquatting is the practice of registering 'well-known brand

names as Internet domain names' in order to force the rightful owners of the marks 'to pay for the right to engage in electronic commerce under their own brand name.'" *Virtual Works, Inc. v. Volkswagen of Am., Inc.,* 238 F.3d 264, 267 (4th Cir.2001) (quoting S.Rep. No. 106–140, at 4 (1999)). Congress has provided that:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>> (ii) registers, traffics in, or uses a domain name that—
>>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark....

15 U.S.C. § 1125(d)(1)(A). Therefore, for Plaintiff to prevail on his cybersquatting claim he must show that: (1) Defendants registered, trafficked in, or used a domain name; (2) that was identical or confusingly similar to a mark owned by Plaintiff; (3) that such mark was distinctive at the time Defendants registered the domain name; and (4) Defendants did so with a bad faith intent to profit from such mark. *See Lamparello v. Falwell,* 420 F.3d 309, 318 (4th Cir.2005); 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25A:50 (4th ed.2014). In this case, it is undisputed that Defendants registered the domain name edzinner.com, *see* Defs.' Mot. for Summ. J. at 5, and that such domain name is identical to Plaintiff's alleged ED ZINNER mark. Thus, the only disputed issues concern whether Plaintiff's alleged ED ZINNER mark was sufficiently distinctive to support a cybersquatting action at the time Defendant registered the domain name and whether Defendants acted with bad faith intent to profit from the alleged ED ZINNER mark. The Court will address each issue in turn.

### 1. The Distinctiveness of the ED ZINNER Mark

#### a. Distinctiveness Under the Lanham Act

■ As an essential element of his asserted section 1125(d) claim, Plaintiff must establish that the ED ZINNER mark was distinctive at the time Defendants registered the edzinner.com domain name. In the context of the ACPA, "'distinctive' ... is a trademark law term of art simply meaning that the designation has achieved status as a mark by being legally recognized as a symbol to identify and distinguish one source." 5 McCarthy, *supra,* § 25A:50. "[T]rademark law has developed a spectrum of the distinctiveness of marks ... [and] [i]n declining order of distinctiveness, marks are referred to as (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, or (4) generic." *OBX–Stock, Inc. v. Bicast, Inc.,* 558 F.3d 334, 340 (4th Cir.2009) (citation and internal quotation marks omitted). "The more distinctive a mark, the more protection it receives." *Id.*

■ Arbitrary, fanciful, and suggestive marks are deemed inherently distinctive and valid as service marks. Arbitrary marks "are based on existing words used in ways unconnected with their common meaning, such as APPLE computer or SHELL gasoline." *Id.* Similarly, fanciful marks are "made-up words expressly coined to serve as trade or service names," *U.S. Search, LLC v. U.S. Seach.com Inc.,* 300 F.3d 517, 523 (4th Cir.2002) (citation omitted), "such as KODAK or EXXON," *OBX–Stock,* 558 F.3d at 340. A suggestive mark "connote[s], rather than describe[s],

some quality, ingredient, or characteristic of the service." *U.S. Search,* 300 F.3d at 523.

■ On the other hand, to enforce a descriptive mark, the mark holder must show that the mark has secondary meaning to demonstrate that such mark has sufficient distinctiveness to warrant protection. The line between suggestive marks and descriptive marks is "thinly drawn." *Synergistic Int'l, LLC v. Korman,* 470 F.3d 162, 171 (4th Cir.2006). Nonetheless, the Court of Appeals for the Fourth Circuit has stated that " '[g]enerally speaking, if the mark imparts information directly, it is descriptive.' " *U.S. Search,* 300 F.3d at 524 (quoting *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984)). Conversely, if the mark " 'stands for an idea which requires some operation of imagination to connect it with the goods [or services], it is suggestive.' " *Id.* (alteration in original) (quoting *Pizzeria Uno,* 747 F.2d at 1527). To be eligible for protection, a descriptive mark must have "acquired a 'secondary meaning' in the minds of the public." *Id.* (citation omitted). "Secondary meaning is a new and additional meaning that attaches to a non-inherently distinctive word or symbol" that allows the public to "use[ ] that word or symbol as a trademark or service mark to identify and distinguish a single commercial source." 2 McCarthy, *supra,* § 15:1.

■ Generic marks lie at the least-protected end of the spectrum of distinctiveness because such marks can never serve as valid service marks. A generic term is the common name for a service. *U.S. Search,* 300 F.3d at 523. A generic term cannot serve as a service mark because "[t]he public has an inherent right to call a product or service by its generic name." *Id.* (citations omitted). In short, as a general matter, a plaintiff: need not demonstrate secondary meaning to estab-lish the validity of an arbitrary, fanciful, or suggestive mark; must demonstrate secondary meaning to establish the validity of a descriptive mark; and cannot establish the validity of a generic term as a mark. The holder of the alleged mark has the burden of proving that the mark is entitled to protection as a service mark. *U.S. Search,* 300 F.3d at 524 (citation omitted).

■ To aid a mark holder in meeting such burden, the Lanham Act creates a presumption of validity for marks that a holder has registered on the Principal Register of the PTO. Under 15 U.S.C. § 1057(b),

> A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

*See also* 15 U.S.C. § 1115(a) (establishing that "[a]ny registration . . . of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark. . . ."). Thus, the issuance of a certificate of registration provides a mark holder with a presumption that such mark is valid. *See, e.g., Pizzeria Uno,* 747 F.2d at 1529.

■ The presumption of validity that accompanies a certificate of registration shifts the burden of production regarding the issue of validity. "Without a certificate of registration, the owner would be required to establish that the disputed mark was sufficiently distinctive to war-

rant trademark protection in the first place. The effect of the presumption is to satisfy that burden in the absence of rebutting evidence." *Retail Servs., Inc. v. Freebies Publ'g,* 364 F.3d 535, 542 (4th Cir.2004) (citations and internal quotation marks omitted). Therefore, "the burden shifted by the presumption is one of production rather than persuasion," *id.* (citing Fed.R.Evid. 301), "requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is generic by a preponderance of evidence," *id.*[3] "If sufficient evidence of genericness is produced to rebut the presumption, the presumption is 'neutralize[d]' and essentially drops from the case, although the *evidence* giving rise to the presumption remains." *Id.* at 543 (quoting *Am. Online, Inc. v. AT & T Corp.,* 243 F.3d 812, 818 (4th Cir.2001)) (citation omitted). With those principles in mind, the Court must assess whether Plaintiff's ED ZINNER mark is sufficiently distinctive to warrant protection.

### b. Plaintiff's Mark

 The parties' primary dispute over the validity of Plaintiff's alleged mark concerns whether the ED ZINNER mark is distinctive enough to warrant protection as a service mark. Defendants contend that such mark is a descriptive mark because it is a personal name mark. As a corollary, Defendants contend that Plaintiff's section 1125(d) claim fails as a matter of law because Plaintiff has not presented sufficient evidence of secondary meaning to establish that the ED ZINNER mark is distinctive.

Additionally, Defendants assert that, even if the PTO registers Plaintiff's mark, such registration would not demonstrate the mark's distinctiveness because Plaintiff had not registered his mark at the time Defendants registered the edzinner.com domain name. In response, Plaintiff contends that he has presented sufficient evidence of distinctiveness based on the PTO's publication of his application to register the ED ZINNER mark and evidence of Plaintiff's use of the mark in connection with musical performances. To resolve the issue, the Court must synthesize the various lines of precedent within the Fourth Circuit's distinctiveness jurisprudence.

As a general matter, Defendants correctly categorize Plaintiff's mark as a descriptive mark because ED ZINNER is a personal name mark. The Fourth Circuit has stated that " '[n]ames—both surnames and first names—are regarded as descriptive terms and therefore one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning.' " *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 125 (4th Cir. 1990) (quoting *815 Tonawanda St. Corp. v. Fay's Drug Co.,* 842 F.2d 643, 648 (2d Cir.1988)); *accord Tana v. Dantanna's,* 611 F.3d 767, 774 (11th Cir.2010); *see also* mark. 2 McCarthy, *supra,* § 13.2. In this case, the ED ZINNER mark merely combines Plaintiff's surname with an abbreviated version of his first name and, therefore, qualifies as a personal name mark. 2 McCarthy, *supra,* § 13.2. Thus, under the

---

**3.** The Court notes that there is a split amongst the courts of appeals whether a certificate of registration shifts merely the burden of production or the burden of persuasion on the issue of validity. *See* 6 McCarthy, *supra,* § 32:138; Charles L. Cook & Theodore H. Davis, Jr., *Litigating the Meaning of "Prima Facie Evidence" Under the Lanham Act,* 103 Trademark Rep. 437, 445–48 (2013). However-

er, though there is some inconsistency within the Fourth Circuit's decisions on the issue, *see* Cook & Davis, *supra,* at 450–51, the Fourth Circuit's most recent decisions indicate that a certificate of registration shifts only the burden of production on the issue of validity, *e.g., OBX–Stock,* 558 F.3d at 342 (citing *Retail Servs.,* 364 F.3d at 542).

Fourth Circuit's general rule regarding personal names, to survive Defendants' motion, Plaintiff must present sufficient evidence from which a reasonable finder of fact could conclude that the ED ZINNER mark has a secondary meaning. *See Perini,* 915 F.2d at 125.

▬▬▬▬ "Proof of secondary meaning entails a rigorous evidentiary standard." *U.S. Search,* 300 F.3d at 525 (citing *Perini,* 915 F.2d at 125). Although no single factor is determinative, the following factors are relevant to the question of secondary meaning: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) sales success, (4) unsolicited media coverage of the product, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use." *Id.* (citing *Perini,* 915 F.2d at 125). "[T]he existence of secondary meaning is generally a question for the trier of fact;" however, a defendant is entitled to summary judgment on the issue of secondary meaning if a plaintiff fails to present evidence to satisfy any of the factors relevant to secondary meaning. *Id.* at 525–26.

Here, Plaintiff has presented almost no evidence to demonstrate secondary meaning under the six factors stated above. With respect to advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the service, and attempts to plagiarize the mark, Plaintiff has presented no evidence whatsoever. Regarding sales success, Plaintiff asserts that he has used the ED ZINNER mark in his capacity as a professional musician. *See* Pl.'s Resp. Opp'n Mot. for Summ. J. at 26. Plaintiff has submitted evidence that he has performed with numerous musical groups, even as recently as August 15, 2014, and that one such group of which Plaintiff was a member sold "a couple thousand copies" of a record. *See* Pl.'s Resp. Opp'n Mot. for Summ. J. Ex. B. at 7–9, ECF No. 27–2;

Zinner Dep. 247:16–17, Sept. 25, 2014, ECF No. 26–4. However, Plaintiff has presented no evidence of sales success associated with the *ED ZINNER mark,* rather than simply musical groups in which Plaintiff performed. Thus, the sales success factor weighs against a finding that the mark has secondary meaning. Finally, although Plaintiff has presented some evidence indicating that he used the ED ZINNER mark "to identify entertainment services in the nature of live musical performances ... since 1974," *see* Pl.'s Resp. Opp'n Mot. for Summ. J. Ex. B. at 7, the Fourth Circuit has indicated that "length of time *alone* is insufficient to establish secondary meaning," *U.S. Search,* 300 F.3d at 526 n. 12 (emphasis in original). Indeed, in his deposition, Plaintiff appears to have conceded that, though he is well known by the famous people with whom he performs music, he is not himself famous. *See* Zinner Dep. 247:6–15, ECF No. 27–2. Accordingly, considering, in isolation, the five factors set forth in *U.S. Search,* Plaintiff has failed to demonstrate sufficient proof of secondary meaning under the "rigorous evidentiary standard" applied in the Fourth Circuit. *See id.* at 525–26. Ordinarily, such failure would indicate that Plaintiff's section 1125(d) claim necessarily would fail because Plaintiff has not presented enough evidence from which a reasonable finder of fact could conclude that the ED ZINNER mark was distinctive at the time Defendants registered the edzinner.com domain name.

Significantly, however, during the pendency of this action, the PTO has registered Plaintiff's ED ZINNER mark on the Principal Register. As noted above, at minimum, such registration is prima facie evidence that the ED ZINNER mark is a valid service mark, *at least from the date of its issuance. See* 15 U.S.C. §§ 1057(b), 1115(a). Thus, the Court must now consider the extent to which Plaintiff's certifi-

cate of registration presents sufficient evidence that Plaintiff's mark was distinctive *at the time Defendants registered the domain name* so as to allow Plaintiff to avoid summary judgment on such issue.

The plain language of the Lanham Act requires the Court to consider Plaintiff's certificate of registration as prima facie evidence that the ED ZINNER mark is distinctive. The Fourth Circuit has underscored that in enacting 15 U.S.C. §§ 1057(b), 1115(a), "Congress has directly spoken" and established that the PTO's action in issuing a certificate of registration is " 'prima facie evidence' of specified facts," including the distinctiveness of the registered mark. *Am. Online*, 243 F.3d at 817 (internal quotation marks omitted). More specifically, "[b]ecause the PTO may not register a generic mark, the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection." *Retail Servs.*, 364 F.3d at 542 (citing 15 U.S.C. §§ 1052(e), 1057(b), 1064(3)). While there is no *per se* rule that "the issuance of a certificate of registration is, by itself, sufficient to create a jury issue on the validity of the mark in question," *id.* at 543, "[t]he prima facie evidence provided by the certificate of registration is generally sufficient to establish a question of material fact that cannot be resolved on summary judgment," *U.S. Search*, 300 F.3d at 524 (citing *Am. Online*, 243 F.3d at 818). Accordingly, here, the certificate of registration has armed Plaintiff with strong evidence that his mark is distinctive.

 The strength of the presumption of distinctiveness that accompanies a certificate of registration depends on the manner in which the PTO issued the certificate. The PTO may not register a mark that is merely descriptive. *See Pizzeria Uno*, 747 F.2d at 1528 (citation omitted). However, under 15 U.S.C. § 1052(f), the PTO may register a descriptive mark if the applicant presents sufficient proof that the mark has secondary meaning and is, in fact, distinctive. 15 U.S.C. § 1052(f); *see also George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 395 (4th Cir.2009) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir.1995)). Thus, by requiring applicants with descriptive marks to prove that such marks have secondary meaning before the PTO registers a mark, the PTO "necessarily decides whether a mark is descriptive or suggestive in its decision whether to register the mark." *Lone Star*, 43 F.3d at 934. Accordingly, if the PTO registers a mark without requiring the applicant to submit proof of secondary meaning, "it has presumptively determined the mark to be suggestive" and the certificate of registration is prima facie evidence that the mark is suggestive. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 172 (4th Cir.2006) (citing *Lone Star*, 43 F.3d at 934); *accord Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir.2006); *see* 2 McCarthy, *supra*, § 11:43 (noting that "when the [PTO] registers a mark without requiring evidence of secondary meaning ('acquired distinctiveness'), it is presumed to be inherently distinctive."). On the other hand, if the PTO issues a certificate of registration after requiring a showing of secondary meaning, the certificate is prima facie evidence that the mark has acquired distinctiveness only as of the time of its registration. *See Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 883 (8th Cir.2014) (citing *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir.1994)). It follows, therefore, that "[i]n a case involving a registered trademark where acquired distinctiveness (i.e., secondary meaning) is an issue, the timing of the effectiveness of that presumption is crucial." *Aromatique*, 28 F.3d at 870.

In this case, the PTO's decision to issue a certificate of registration for the ED ZINNER mark without a showing of secondary meaning requires the Court to reject Defendants' contention that such registration is not probative of the distinctiveness of Plaintiff's mark. Defendants correctly note that, to prevail on his section 1125(d) claim, Plaintiff must demonstrate that his mark was distinctive at the time Defendants registered the edzinner.com domain name. *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I); *Carl v. bernardjcarl.com*, 662 F.Supp.2d 487, 498 (E.D.Va. 2009) (Ellis, J.), *aff'd in part and rev'd in part on other grounds by* 409 Fed.Appx. 628 (4th Cir.2010) (unpublished). However, it does not follow from such proposition that Plaintiff "clearly may not rely on" his certificate of registration to show secondary meaning simply because Plaintiff filed his application nearly one month after Defendants registered the edzinner.com domain name. *See* Defs.' Mot. for Summ. J. at 25. To the contrary, the PTO's decision to register Plaintiff's mark without requiring proof of secondary meaning is prima facie evidence that Plaintiff's mark was distinctive *at the time Defendants registered the domain name* because the PTO necessarily determined that Plaintiff's mark is suggestive, *Synergistic Int'l*, 470 F.3d at 172, and, therefore, inherently distinctive, *OBX–Stock*, 558 F.3d at 340. Accordingly, the certificate of registration is strong evidence from which a trier of fact could reasonably conclude that Plaintiff's mark is distinctive.

Importantly, the Court recognizes that, in this case, it is less certain than in other cases that the Court should presume that Plaintiff's mark is inherently distinctive based on the certificate of registration because, unlike the Fourth Circuit, the PTO considers personal names to be inherently distinctive. As stated above, the Fourth Circuit regards personal names as descriptive marks that are valid only upon a showing of secondary meaning. *Perini*, 915 F.2d at 125. Yet, the PTO has established a different standard to assess the distinctiveness of personal names.

In *Brooks v. Creative Arts By Calloway, LLC*, the Trademark Trial and Appeal Board ("T.T.A.B.") considered whether an opposer in an opposition proceeding was required to show that a personal name mark had acquired secondary meaning to establish that a likelihood of confusion between such alleged prior mark and the mark in the application would result from granting the application. 93 U.S.P.Q.2d 1823, 2010 WL 595585, at *1, *9 (T.T.A.B. 2010). The Board concluded that the opposer need not show that the personal name mark had acquired secondary meaning because personal name marks are inherently distinctive. *Id.* at *9. The Board stated that under the Lanham Act,

[a] personal name mark, unless it is primarily merely a surname, is registrable on the Principal Register without a showing of secondary meaning, and thus is deemed to be inherently distinctive under the Lanham Act if the record shows that it is used in a manner that would be perceived by purchasers as identifying the services in addition to the person.

*Id.* at *8. In support of its conclusion, the Board cited earlier decisions of the Commissioner of Patents that held that personal name marks did not require a showing of secondary meaning, unlike surname marks, based on the differences between the Trade Mark Act of 1905 and the Lanham Act. *See id.* at *8–9 (citing *Ex Parte Dallioux*, 83 U.S.P.Q. 262, 263 (Comm'r 1949); *Ex Parte Rivera Watch Corp.*, 106 U.S.P.Q. 145 n. 9 (Comm'r 1955)). More specifically, the Board noted that in *Ex Parte Dallioux*, the Commissioner discussed the interplay between such acts. In that decision, the Commissioner ob-

served that under the 1905 Act, subject to certain exceptions, "'registration of a mark which ... consists merely of the name of an individual was prohibited'" and, therefore, "'under the Act of 1905, registration of marks consisting of names of individuals, including surnames, was prohibited.'" *Id.* at *9 (quoting *Ex Parte Dallioux*, 83 U.S.P.Q. at 263). However, in the Lanham Act, in place of such restriction, Congress prohibited registration of a mark that was "'primarily merely a surname.'" *Id.* (quoting *Ex Parte Dallioux*, 83 U.S.P.Q. at 263). Thus, the Commissioner concluded that

"To refuse registration of the [ANDRE DALLIOUX] mark ... would be in effect to continue the rule of the Act of 1905, even though the prohibition against registration of a mark consisting of the name of an individual (which included surnames but was not restricted thereto), no longer remains in the law...."

*Id.* (omissions in original) (quoting *Ex Parte Dallioux*, 83 U.S.P.Q. at 263). After quoting from the *Ex Parte Dallioux* decision at length, the Board then underscored that the "USPTO continues to view personal names as inherently distinctive and registrable on the Principal Register." *Id.* (citing *In re J.J. Yeley*, 85 U.S.P.Q.2d 1150 (T.T.A.B.2007)).

In light of the conflicting standards in *Brooks* (T.T.A.B.) and *Perini* (Fourth Circuit), the Court must consider the extent to which such conflict undermines the evidentiary value of Plaintiff's certificate of registration. In at least one case, the Fourth Circuit has looked at the PTO's rationale in issuing a certificate of registration when determining whether a district court properly concluded that a mark was invalid as a matter of law. In *OBX–Stock*, the district court granted summary judgment to a defendant in a trademark infringement action because the plaintiff had not presented evidence that its mark,

a geographically descriptive mark, had secondary meaning, even though the plaintiff had obtained certificates of registration for the mark. *See* 558 F.3d at 340, 341–42. In the district court's view, there was "simply no evidence in the record of this case that any consumer associates [the plaintiff's] OBX [mark] with [the plaintiff's] products or [the] [p]laintiff itself." *Id.* at 341. On appeal, the Fourth Circuit affirmed the district court. With respect to the certificates of registration, the Fourth Circuit took note of the fact that the PTO had initially rejected the plaintiff's application five times before issuing the certificates as a result of pressure from North Carolina's congressional delegation. *Id.* at 342. In light of the legislative intervention, the Court stated that "whatever support OBX–Stock might be able to claim from the registrations is in this case undermined by the fact that the PTO only grudgingly issued the registrations after the intervention by North Carolina's congressional delegation." *Id.*

To the extent that *OBX–Stock* suggests that a court should scrutinize the PTO's rationale in issuing a certificate of registration, arguably such decision might indicate that the conflict between the Board's decision in *Brooks* and the Fourth Circuit's decision in *Perini* undermines the evidentiary value of Plaintiff's certificate. On that view, Plaintiff's certificate of registration might be considered less probative of the distinctiveness of Plaintiff's mark because the PTO found Plaintiff's mark to be inherently distinctive by applying the PTO's more lenient standard with respect to personal names. In other words, Plaintiff's certificate of registration reflects that the ED ZINNER mark is inherently distinctive only because the PTO erroneously—at least based on *Perini* and the common law rule that personal name marks are valid only after acquiring secondary meaning, *see* 2 McCarthy § 13.2—consid-

ers all personal name marks as inherently distinctive. Therefore, the Fourth Circuit's decisions in *OBX–Stock* and *Perini* call into question whether this Court should consider Plaintiff's certificate of registration as prima facie evidence that the ED ZINNER mark is inherently distinctive.

On the other hand, the Fourth Circuit's jurisprudence regarding the presumption of validity created by a certificate of registration, discussed above, pulls in the opposite direction and suggests that the Court should respect the PTO's decision. As early as *Pizzeria Uno,* the Fourth Circuit has held that the issuance of a certificate of registration without proof of secondary meaning indicates that the PTO has concluded that the mark is suggestive, and that "essential fact ... must be considered prima facie correct by a court considering the validity of a trademark, or the prima facie evidence rule would be rendered ineffective...." 747 F.2d at 1529 (citations omitted). Indeed, the Fourth Circuit has instructed that "a district court should not freely substitute its opinion for that of the PTO," *Am. Online,* 243 F.3d at 817 (citation omitted), and in at least two instances has reversed a district court for failing to treat a certificate of registration issued without a showing of secondary meaning as prima facie evidence that a mark was suggestive, *see id.* at 818; *RFE Indus., Inc. v. SPM Corp.,* 105 F.3d 923, 926 (4th Cir.1997).

Having carefully weighed the competing considerations present in the Fourth Circuit's Lanham Act jurisprudence regarding certificates of registration, the Court finds that Plaintiff's certificate of registration is prima facie evidence that his mark is inherently distinctive, notwithstanding the conflict between *Brooks* and *Perini.* District courts are faced with uncertainty because the PTO and various courts of appeals, including the Fourth Circuit, have

split on whether personal names are inherently distinctive under the Lanham Act. *Cf.* 2 McCarthy, *supra,* § 13.2 (noting that the rule for registering personal name trademarks under the Lanham Act is different from the common law rule that personal names require proof of secondary meaning). However, as far as this Court is aware, no court has extended the reasoning of *OBX–Stock,* where a geographic name was at issue and the context of the issuance was unique, to situations in which the PTO issues certificates of registration for personal names without requiring a showing of secondary meaning. The Court declines to do so here. The plain language of 15 U.S.C. §§ 1057(b), 1115(a) require this Court to consider Plaintiff's certificate of registration as prima facie evidence that the ED ZINNER mark is valid, and the Fourth Circuit has held that the PTO's decision to register a mark without requiring proof of secondary meaning is powerful evidence that the mark is inherently distinctive. *See Am. Online,* 243 F.3d at 817 (citations omitted). The Court refuses to render ineffective the prima facie evidence rule established in the Lanham Act by disregarding it, *see Pizzeria Uno,* 747 F.2d at 1529, and, therefore, considers Plaintiff's certificate of registration as prima facie evidence that his mark is inherently distinctive.

Plaintiff's certificate of registration presents a genuine dispute of material fact regarding the validity of Plaintiff's mark such that the Court cannot find, as a matter of law, that Plaintiff has not demonstrated that his mark was distinctive and valid at the time Defendants registered the edzinner.com domain name. As noted above, aside from Plaintiff's certificate of registration, Plaintiff has presented almost no evidence to demonstrate secondary meaning under the six factors stated in *U.S. Search.* To be sure, in Fourth Circuit decisions regarding summary judg-

ment on the issue of distinctiveness, many plaintiffs have presented more evidence than simply a certificate of registration. *See, e.g., Am. Online,* 243 F.3d at 818. However, Plaintiff's certificate of registration, alone, is prima facie evidence that his mark was distinctive when Defendants registered the domain name in question. *See Am. Online,* 243 F.3d at 817. Through such certificate, Plaintiff has shifted the burden of production to Defendants. *Retail Servs.,* 364 F.3d at 542. Although the burden of persuasion remains with Plaintiff, *id.,* Defendants have not presented sufficient evidence that Plaintiff's mark was non-distinctive to rebut the presumption that Plaintiff's mark was distinctive at the time Defendants registered the domain name in question. Thus, for the purposes of surviving summary judgment, Plaintiff has presented sufficient evidence to prove that his mark was distinctive at the time Defendants registered the edzinner.com domain name. *See U.S. Search,* 300 F.3d at 524 (noting that "[t]he prima facie evidence provided by the certificate of registration is generally sufficient to establish a question of material fact that cannot be resolved on summary judgment").

## 2. Bad Faith Intent to Profit

 To prevail on a section 1125(d) claim, Plaintiff must demonstrate that Defendants registered or used the ED ZINNER mark with the "bad faith intent to profit" therefrom. 15 U.S.C. § 1125(d)(1)(A)(i). To determine whether Defendants possessed a "bad faith intent to profit" from the ED ZINNER mark, the Court may consider the following non-exhaustive list of factors:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of the registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

*Id.* § 1125(d)(1)(B)(i). As the Fourth Circuit has recognized, " '[t]here is no simple formula for evaluating and weighing these factors. For example, courts do not simply count up which party has more factors in its favor after the evidence is in.' " *Lamparello v. Falwell*, 420 F.3d 309, 319 (4th Cir.2005) (alteration in original) (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002)). "In fact, because use of these listed factors is permissive, [the Court] need not . . . march through them all in every case." *Id.* (citation and internal quotation marks omitted). " 'The factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit.' " *Id.* at 319–20 (quoting *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 811 (6th Cir.2004)).

 In this case, the first three factors weigh in favor of a finding of bad faith intent to profit. Defendants have no trademark or intellectual property rights in the domain name, the domain name does not consist of a name commonly used to identify Defendants, and Defendants have not used the domain name in connection with the bona fide offering of any goods or services. *See* 15 U.S.C. § 1125(b)(1)(B)(i)(I)-(III). Thus, factors I–III suggest that Defendants had the bad faith intent to profit from Plaintiff's mark.

On the other hand, factors IV, V, and VIII weigh in Defendants' favor. Regarding factor IV—bona fide noncommercial or fair use of the mark in a site accessible under the domain name—the Fourth Circuit has stated that " 'use of a domain name for purposes of . . . comment, [and] criticis[ ]' . . . constitutes a 'bona fide noncommercial or fair use' under the statute." *Lamparello*, 420 F.3d at 320 (quoting H.R.Rep. No. 106–412, 1999 WL 970519, at *11); *cf. Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 332 (4th Cir.2015) ("The most scathing speech and the most disputable commentary are also the ones most likely to draw their intended targets' ire and thereby attract Lanham Act litigation. It is for this reason that law does not leave such speech without protection."). The content of the edzinner.com site—for example, the statement that "we will review [Ed Zinner's] documented statements and actions prior to his Multiple Employer Welfare Arrangement Industry or MEWA conviction"—strongly suggests that Defendants used the site to criticize Plaintiff by discussing his prior felony conviction. *See* Defs.' Mot. for Summ. J. Ex. 14.[4] Therefore, under *Lamparello*, factor IV militates against a find-

---

4. With respect to factor IV, Plaintiff states that he "has uncovered evidence that will prove the defendant was a partner/member in a competing company of Zinner's company Ocean Equity." Pl.'s Resp. Opp'n Mot. for Summ. J. at 23. Presumably, Plaintiff contends that such evidence indicates that Defendants did not register and use the site for a bona fide noncommercial or fair use. *Cf. Silver Ring Splint Co. v. Digisplint, Inc.*, 567 F.Supp.2d 847, 856–57 (W.D.Va.2008) (citing *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 499 (2d Cir.2000)) (finding that a defendant's registration of a domain name to prevent a competitor from using it, in combination with other factors, demonstrated a bad faith intent to profit from the plaintiff's mark). The Court is mindful that it must view the evidence in a light most favorable to Plaintiff, the non-moving party. However, though Plaintiff has broadly *alleged* that Olenych, through Ally, was part of a larger scheme to steal business from Plaintiff's companies, Plaintiff has presented no *evidence* of such a scheme. Thus, no facts in the record indicate that the edzinner.com site had a commercial purpose.

ing of bad faith intent to profit.[5] Relatedly, the evidence that Defendants intended to use the edzinner.com domain to criticize Plaintiff indicates that Defendants lacked the "intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V); *cf. Radiance Found.*, 786 F.3d at 328–30, 331–32. Furthermore, the absence of evidence that Plaintiff has an online location or website prevents factor V from pointing towards bad faith. *See Lucas Nursery*, 359 F.3d at 810. Consequently, factor V also points towards a finding that Defendants lacked the bad faith intent to profit from Plaintiff's ED ZINNER mark. In addition, it is undisputed that Defendants have not registered "multiple domain names which [they] know[ ] are identical or confusingly similar to marks of others that are distinctive at the time of the registration of such domain names...." *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VIII); Defs.' Mot. for Summ. J. at 4. Accordingly, factor VIII also weighs against a finding of bad faith intent to profit.

However, contrary to Defendants' contention, there is at least a genuine dispute of fact whether factor VI favors Plaintiff or Defendants. A "person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or hav-

ing an intent to use, the domain name in the bona fide offering of any goods or services" is an indicium of bad faith. 15 U.S.C. § 1125(d)(1)(B)(i)(VI). Viewing the evidence in a light most favorable to Plaintiff, the evidence of Defendants offering to sell the edzinner.com domain name to Plaintiff includes the voicemail that Mr. Fernandez left for Mr. Brown and the conversations between Mr. Fernandez and Mr. Brown. In the voicemail, Mr. Fernandez states "I'm call[ing] regarding the domain name edzinner.com. Uh, I'm representing a client who is interested in selling that domain name." Defs.' Mot. for Summ. J. Ex. 17.[6] Thereafter, Mr. Fernandez and Mr. Brown had at least one conversation in which the "gist of the conversation was, [Mr. Fernandez's] client wants to be paid for this website." Brown Dep. 50:20–21. Also, the tone of such conversation was that "it would take a lot of money to pay off" Mr. Fernandez's client. *Id.* at 49:24–25, 50:1. Such evidence would permit a reasonable finder of fact to conclude that factor VI supported a finding of bad faith.

The Court rejects Defendants' argument that Mr. Fernandez's statement that his client was "interested in selling [the edzinner.com] domain name" cannot be construed as an "offer to sell" the domain name. Admittedly, if Mr. Fernandez had quoted to Mr. Brown a particular price for the domain name, the evidence of an offer to sell might be stronger. However, the Court concludes that Defendants' stated interest in selling the domain name and their communication, through Mr. Fernan-

---

**5.** Under 15 U.S.C. § 1125(d)(1)(b)(ii), "[b]ad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *See generally* 5 McCarthy, *supra*, § 25A:63. Defendants have not assert-

ed this "reasonable belief" safe-harbor defense as a basis for summary judgment.

**6.** Neither party disputes that Mr. Fernandez contacted Mr. Brown and communicated with him on behalf, and at the behest, of Defendants.

dez, that they "want[ed] to be paid"—in a conversation with a tone suggesting that Defendants wanted to be paid a lot of money—for the site are sufficient to permit a reasonable finder of fact to conclude that Defendants offered to sell the edzinner.com domain name to the mark owner, Plaintiff, "without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services." *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VI); *cf. E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 275–76 (5th Cir.2002) (finding that "uncontradicted evidence that [the defendant] was engaged in commerce in the selling of domain names and that they hoped to sell this domain name someday" suggested bad faith).[7] Therefore, at minimum, there is a genuine dispute of fact whether factor VI favors a finding of bad faith.

The Court also rejects Defendants' contention that the Mr. Fernandez's statements in the voicemail cannot constitute an "offer to sell" because Mr. Fernandez made the statements in response to Mr. Brown's inquiry regarding the contact information of the domain name registrant. Viewing the evidence in a light most favorable to Plaintiff, a reasonable finder of fact could conclude that Plaintiff did not seek out Mr. Fernandez's offer. At the time Mr. Fernandez contacted Mr. Brown, Plaintiff, through Mr. Brown, had only indicated that he wished to acquire the contact information of the edzinner.com domain registrant. The evidence in the record indicates that the first mention of Plaintiff purchasing the edzinner.com domain name occurred when Mr. Fernandez left a voicemail with Mr.

Brown indicating that Mr. Fernandez's client wished to sell the domain name. The mere fact that Mr. Fernandez broached the subject of selling the domain name in response to Mr. Brown's inquiry regarding contact information would not prevent a reasonable finder of fact from concluding that Defendants offered to sell the edzinner.com domain name to Plaintiff.

Finally, at least with respect to factor VI, the Court finds unpersuasive Defendants' contention that Mr. Fernandez's offer is not admissible evidence because of Federal Rule of Evidence 408. Such rule provides:

(a) Prohibited uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or

---

**7.** In the context of contract law, "offer" is a term of art. It is not immediately clear that Congress intended to equate an "offer to sell" for Lanham Act purposes with an "offer" under contract law. One prominent trademark scholar has suggested that "[i]f the registrant has not used, or did not intend to use, the domain name to offer goods and services, then any suggestion that the domain name is available for sale should bring a court closer to a finding of bad faith." 2 Anne LaLonde, *Gilson on Trademarks* § 7A.06[1][c][vi] (2014).

proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408. In Defendants' view, "[i]t is simply inconceivable" that the communication from Mr. Fernandez to Mr. Brown "could be construed as anything other than a settlement communication." Defs.' Reply Supp. Mot. for Summ. J. at 12. However, the Court finds that Plaintiff is not offering the voicemail from Mr. Fernandez "to prove or disprove the validity or amount of a disputed claim." *See* Fed.R.Evid. 408(a). Rather, Plaintiff offers it for "another purpose," Fed.R.Evid. 408(b), namely to prove an element at the core of Plaintiff's claim: whether Defendant possessed the bad faith intent to profit from registering or using the edzinner.com domain name. *See Johnson v. Hugo's Skateway,* 949 F.2d 1338, 1346 (4th Cir.1991) (affirming admission of consent decree to show intent); *Domain Name Clearing Co. v. F.C.F. Inc.,* 16 Fed.Appx. 108, 111 n. 3 (4th Cir.2001) (unpublished) (finding that district court did not abuse discretion in admitting a demand for payment for a domain name in part because it "sp[oke] directly to the bad faith determination" in a section 1125(d) action). Thus, the Court concludes that Federal Rule of Evidence 408 does not render inadmissible the voicemail from Mr. Fernandez or his communications with Mr. Brown, at least for purposes of demonstrating bad faith intent to profit.

Like factor VI, at minimum, there is a genuine dispute of material fact regarding whether factor VII suggests that Defendants registered or used the edzinner.com domain name with the bad faith intent to profit from Plaintiff's ED ZINNER mark. Under factor VII, the Court considers "the person's provision of material and misleading false contact information when applying for the registration of the domain name, [and] the person's intentional failure to maintain accurate contact information." 15 U.S.C. § 1125(d)(1)(B)(i)(VII). Defen-

dants correctly note that they initially provided accurate registration information to Tucows. However, "intentional failure to maintain accurate contact information" also suggests bad faith. *Id.* Here, "Olenych altered the registration information to a fictitious name and address in order to continue to protect Defendants' privacy" once Tucows advised that it would remove the privacy protections on the edzinner.com domain name. Defs.' Mot. for Summ. J. at 8. Although Defendants contend that such alteration was merely in response to Plaintiff's actions and threat to sue Tucows, the evidence of such intentional alteration creates a dispute of material fact regarding whether Olenych altered the domain name registration in an attempt to profit in bad faith from the use of the domain name. A reasonable finder of fact could conclude that a registrant's alteration of contact information, upon learning of the domain registrar's decision to remove the privacy protections on a domain name, is consistent with the actions of someone seeking to profit in bad faith from using the ED ZINNER mark.

Thus, as the above review indicates, statutory factors I, II and III weigh in Plaintiff's favor, factors IV, V, and VIII weigh in Defendants' favor, and there are genuine disputes of fact with respect to whether factors VI and VII indicate bad faith. Mindful that the statutory "'factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit,'" *Lamparello,* 420 F.3d at 319 (quoting *Harrods Ltd.,* 302 F.3d at 234), the Court has also considered the evidence in the record as a whole that might not fit neatly into one of the statutory factors. In conjunction with the evidence discussed above, the history of litigation between Plaintiff, Olenych, and Olenych's son, and Olenych's short unpublished manuscript—which Olenych

admittedly based on his experiences with Plaintiff and involves someone seeking to inflict "total humiliation" on "Edward W. Zinner" by exposing the truth about "Ed" on the internet, television, newspaper, and radio, Pl.'s Resp. Opp'n Mot. for Summ. J. Ex. K-could lead a reasonable finder of fact to conclude that Defendants registered the edzinner.com domain name and possessed the bad faith intent to profit therefrom. *Cf. Flow Control Indus. Inc. v. AMHI Inc.,* 278 F.Supp.2d 1193, 1200–01 (W.D.Wash.2003) (finding a triable issue of fact regarding bad faith intent based on evidence that the defendants "intentionally registered the [disputed] domain name for the purpose of improving their bargaining position in a commercial dispute.").

In short, the Court *cannot conclude,* as a matter of law, that no reasonable trier of fact could find that Defendants possessed the bad faith intent to profit from Plaintiff's mark.[8] Accordingly, Plaintiff has adduced sufficient evidence with respect to his section 1125(d) claim to defeat Defendants' motion for summary judgment because, viewing the evidence in a light most favorable to Plaintiff, a reasonable trier of fact could find that Plaintiff possessed a protected mark in his name, ED ZINNER, Defendants registered the edzinner.com domain name that is identical to Plaintiff's mark, and Defendants had the bad faith intent to profit from Plaintiff's

mark. Thus, the Court will **DENY IN PART** Defendants' motion with respect to Plaintiff's section 1125(d) claim.

**B. Plaintiff's Section 8131 Claim**

▆▆▆▆ The Court will now turn to whether Defendants are entitled to summary judgment on Plaintiff's section 8131 claim. Section 8131 provides:

Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.

15 U.S.C. § 8131(1)(A). Thus, to prevail on his section 8131 claim, Plaintiff must establish three elements: (1) Defendants registered a domain name that consists of Plaintiff's name, or a name substantially and confusingly similar thereto; (2) without Plaintiff's consent; and (3) with the specific intent to profit by selling the domain name for financial gain to Plaintiff or a third party. However, the Lanham Act provides a limited exception for a person who registers a personal name in connection with a copyrighted work:

A person who in good faith registers a domain name consisting of the name of another living person, or a name sub-

---

8. The Court need not "march through" every factor in every case. *Lamparello,* 420 F.3d at 319. The Court's conclusion with respect to factors I–VIII renders an analysis of factor IX unnecessary because such factor would not alter the Court's conclusion that there is a genuine dispute of material fact regarding the element of bad faith. Factor IX, "the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1)," requires that a mark be *both* distinctive and famous. At least one scholar has suggested that such conjunctive requirement is "a flaw in the drafting of the

ACPA." LaLonde, *supra,* § 7A.06[1][c][ix]. While Plaintiff has shown that his mark is presumptively distinctive through his certificate of registration, Plaintiff has not submitted any evidence that his mark "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner," and therefore "famous." *See* 15 U.S.C. § 1125(c)(2)(A). Thus, under the plain text of the rule, it appears that factor IX weighs in Defendants' favor. Nevertheless, such observation does not alter the Court's conclusion that Defendants are not entitled to summary judgment on Plaintiff's section 1125(d) claim.

stantially and confusingly similar thereto, shall not be liable under this paragraph if such name is used in, affiliated with, or related to a work of authorship protected under Title 17, . . . and if the person registering the domain name is the copyright owner or licensee of the work, the person intends to sell the domain name in conjunction with the lawful exploitation of the work, and such registration is not prohibited by a contract between the registrant and the named person. . . .

*Id.* § 8131(1)(B).

. In this case, with respect to Plaintiff's prima facie section 8131 claim, it is undisputed that Plaintiff has presented sufficient evidence to satisfy the first and second elements of a section 8131 claim: Defendants registered a domain name, edzinner.com, which is a combination of Plaintiff's nickname, Ed, and surname, Zinner. The parties' dispute concerns whether Plaintiff has adduced sufficient evidence to permit a reasonable trier of fact to conclude that Defendants registered the edzinner.com domain name with the specific intent to profit from selling, for financial gain, that domain name to Plaintiff.

Although there is a dearth of authority [9] regarding what constitutes "a specific intent to profit from [the name of another living person] by selling the domain name for financial gain to that person," the Court concludes that Plaintiff has presented evidence from which a reasonable finder of fact could find that Defendants possessed such an intent. Here, Mr. Fernandez's expression to Mr. Brown in his voicemail statement that "I'm representing a client who is interested in selling" the edzinner.com domain name, although temporally separated from Defendants' registration of the edzinner.com domain name by twenty-two days, would permit a reasonable finder of fact to infer that Defendants possessed the specific intent to profit from selling the edzinner.com domain name at the time they registered it. *Cf. Schmidheiny*, 285 F.Supp.2d at 628 (describing a four-month time lapse between registration and an offer to sell as

**9.** Only a handful of courts have considered whether summary judgment is appropriate in a section 8131 action—or its predecessor that was codified at 15 U.S.C. § 1129. *See Randazza v. Cox*, No. 2:12–cv–2040–JAD–PAL, 2014 WL 1407378 (D.Nev. Apr. 10, 2014); *Philbrick v. eNom, Inc.*, 593 F.Supp.2d 352 (D.N.H.2009); *Salle v. Meadows*, No. 6:07–CV–1089–Orl–31DAB, 2007 WL 4463920 (M.D.Fla. Dec. 17, 2007) (unpublished); *Trudeau v. Lanoue*, No. 04 C 7165, 2006 WL 516579 (N.D.Ill. Mar. 2, 2006) (unpublished); *Schmidheiny v. Weber*, 285 F.Supp.2d 613 (E.D.Pa.2003). A similarly limited number of courts have analyzed section 8131 and its precursor in other procedural postures. *See Misterovich v. Burggraf*, No. 1:13–CV–1221, 2014 WL 7010801 (W.D.Mich. Dec. 10, 2014) (default judgment); *Bogoni v. Gomez*, 847 F.Supp.2d 519 (S.D.N.Y.2012) (preliminary injunction); *Tollefson v. Pladson*, Civil No. 3:11–CV–62, 2012 WL 3402107 (D.N.D. May 8, 2012) (unpublished) (motion to dismiss); *Maus v. Ennis*, No. 6:10–cv–1904–Orl– 31DAB, 2012 WL 1252677 (M.D.Fla. Mar. 16, 2012) (unpublished) (default judgment), *aff'd*, 513 Fed.Appx. 872 (11th Cir.2013) (unpublished); *Carl v. bernardjcarl.com*, 662 F.Supp.2d 487 (E.D.Va.2009) (default judgment), *aff'd in part & vacated in part*, 409 Fed.Appx. 628 (4th Cir.2010) (unpublished); *Dawson v. Brandsberg*, No. 6:06 CV 019, 2006 WL 2915234 (W.D.Va. Oct. 10, 2006) (unpublished) (motion to dismiss); *Wright v. Domain Source, Inc.*, No. 02 C 2525, 2002 WL 1998287 (N.D.Ill. Aug. 28, 2002) (unpublished) (default judgment); *Mattel, Inc. v. Internet Dimensions Inc.*, No. 99 Civ. 10066(HB), 2000 WL 973745 (S.D.N.Y. July 13, 2000) (unpublished) (bench trial). Likewise, the courts of appeals have considered the statute in few instances. *Maus v. Ennis*, 513 Fed.Appx. 872 (11th Cir.2013); *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir.2011); *Carl v. bernardjcarl.com*, 409 Fed.Appx. 628 (4th Cir.2010); *Schmidheiny v. Weber*, 319 F.3d 581 (3d Cir.2003).

"relatively brief," while determining that a plaintiff was entitled to summary judgment on the issue of specific intent to profit). Mr. Fernandez's statement is evidence that Defendants possessed the specific intent to sell the edzinner.com domain name because it expressly indicates that Mr. Fernandez's client, Olenych, had an interest in selling the domain name. And it is reasonable to infer that such intent existed both at the time of the voicemail and when Defendants registered the domain name, because Defendants registered the domain name less than a month before Mr. Fernandez's statement. Moreover, there is also evidence in the record from which a reasonable finder of fact could conclude that Defendants had the specific intent *to profit* from selling the edzinner.com domain name *for financial gain.* When Mr. Brown responded to Mr. Fernandez's voicemail indicating that Mr. Fernandez's client was interested in selling the edzinner.com domain name, "the gist" of the conversation was that Mr. Fernandez's client, Olenych, "want [ed] to be paid for [the] website." Brown Dep. 50:20–21. Furthermore, the tone of such conversation was that "it would take a lot of money to pay off … [the] owner of [the] website." *Id.* at 49:24–25, 50:1. Such evidence would permit a reasonable finder of fact to find that Defendants not only possessed the specific intent to sell the edzinner.com domain to Plaintiff when they registered it, but also possessed the specific intent to *profit from selling the domain name for financial gain* because they indicate that Olenych hoped to obtain substantial monetary compensation through selling the domain name to Plaintiff.[10] Accordingly, the Court holds that Defendants are not entitled to summary judgment on the basis that Plaintiff has failed to demonstrate a prima facie claim against Defendants.

The Court's conclusion that Plaintiff has presented sufficient evidence to establish all three elements of a section 8131 claim does not, however, end the Court's inquiry because Defendants also contend that their registration of the domain name falls within the statute's copyright-owner exception. The copyright-owner exception exempts from liability a defendant who:

> (1) in good faith registers a domain name consisting of the name of another living person or a confusingly similar name if the domain name is used in, affiliated with, or related to a work of authorship protected under the Copyright Act; and (2) if the person registering the domain name is the copyright owner or licensee of the work; and (3) the person intends to sell the domain name in conjunction with the lawful exploitation of the work; and (4) the registration is not prohibited by a contract between the registrant and the named person.

McCarthy, *supra,* § 25A:82. Defendants contend that the exception applies because the edzinner.com domain name is related to a work of authorship; Olenych's unpub-

---

**10.** Some Courts have held that the statutory factors that guide a determination of bad faith intent to profit in section 1125(d) claims are useful in determining whether a defendant possesses a specific intent to profit by selling a domain name for financial gain in section 8131 cases. *E.g., Randazza v. Cox,* 920 F.Supp.2d 1151, 1157 (D.Nev.2013). Although Congress and the President enacted section 1125(d) and section 8131 with differ- ent language regarding intent—requiring a bad faith intent to profit for section 1125(d) and a specific intent to profit from selling a domain name for financial gain for section 8131, if the Court relied on the section 1125(d) factors to assess Plaintiff's section 8131 claim, its reasoning would be identical to its above analysis of Plaintiff's section 1125(d) claim.

lished manuscript involving the fictional character "Ed Zinner."

The Court holds that there is a genuine dispute of material fact regarding the applicability of the copyright-owner exception and, therefore, Defendants are not entitled to summary judgment on Plaintiff's section 8131 claim. As noted above, the copyright-owner exception applies only where a defendant registers the domain name in good faith. *See id.* The Court's preceding analysis of Plaintiff's section 1125(d) claim and its conclusion that there is a genuine dispute of material fact as to whether Defendants possessed the bad faith intent to profit from Plaintiff's ED ZINNER mark also leads the Court to find, for the same reasons, that there is a genuine dispute of material fact regarding whether Defendants registered the edzinner.com domain name in good faith within the meaning of the copyright-owner exception.

Additionally, the Court finds that there is a genuine dispute of fact regarding whether Defendants intended to sell the edzinner.com domain name in conjunction with the lawful exploitation of Olenych's manuscript. Defendants' only evidence that they intended to sell the edzinner.com domain name is Olenych's statement that one of his reasons for acquiring the domain name was to promote his book. *See* Olenych Dep. 34:5–8, Aug. 28, 2014, ECF No. 26–3. However, the content on the edzinner.com website does not mention Olenych's manuscript. *See* Defs.' Mot. for Summ. J. Ex. 14. And although both the website and manuscript involve someone named "Ed Zinner," the website refers to "Edward Zinner"—Plaintiff's name—while the manuscript describes the "Ed Zinner" character therein as "EDWARD *W.* ZINNER." Compare *id.*, with Pl.'s Resp. Opp'n Mot. for Summ. J. Ex. K (emphasis added). From such discrepancy, a reasonable finder of fact could conclude that the edzinner.com domain name did not relate

to Olenych's manuscript, but, rather, related to Plaintiff. Accordingly, for that reason, too, Defendants are not entitled to summary judgment on Plaintiff's section 8131 claim based on the copyright-owner exception. Therefore, the Court will DENY IN PART Defendants' motion as to Plaintiff's section 8131 claim.

### C. Damages

Finally, the Court will assess whether Defendants are entitled to summary judgment on the issue of damages with respect to Plaintiff's section 1125(d) and section 8131 claims. The Court will begin with Plaintiff's section 8131 claim.

#### 1. Section 8131

■ As a matter of law, Plaintiff cannot recover damages for his section 8131 claim. Section 8131 both establishes a cause of action for cybersquatting on a personal name domain name and limits the remedies available to a plaintiff pursuing such an action. It provides:

> In any civil action brought under paragraph (1), a court may award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff. The court may also, in its discretion, award costs and attorneys' fees to the prevailing party.

15 U.S.C. § 8131(2). Thus, though the statute authorizes the Court to grant injunctive relief and award attorneys' fees in certain instances, it does not permit the Court to award damages. Accordingly, the Court will GRANT IN PART Defendants' motion for summary judgment on the issue of damages for Plaintiff's section 8131 claim.

#### 2. Section 1125(d)

The Court will now consider Defendants' contention that it is entitled to summary judgment on the issue of damages with respect to Plaintiff's section 1125(d) claim.

With respect to damages under section 1125(d), in their opening brief, Defendants' sole contention was that "Zinner's failure to timely register his alleged trademark in his personal name is an automatic bar to damages under 15 U.S.C. § 1125(d)." Defs.' Mot. for Summ. J. at 27. More specifically, Defendants assert that "[w]here a plaintiff files suit under the cyberpiracy provisions of the Lanham Act alleging a trademark in his personal name, he 'is not entitled to recover damages' where he has failed to show that his personal name 'acquired secondary meaning at the time' the domain name was registered or that he has 'formally registered the mark with the [PTO].'" *Id.* at 28 (quoting *Carl*, 662 F.Supp.2d at 497). In their reply brief, Defendants present the additional argument that they are entitled to summary judgment on the issue of damages because Plaintiff has "failed to tie any allegations of his damages in this action to the contents or existence of the website 'edzinner.com.'" Defs.' Reply Supp. Mot. for Summ. J. at 17.

In contrast to section 8131, the Lanham Act permits a court to award damages for violations of section 1125(d). The Act provides:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under *section 1125* (a) or (*d*) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a) (emphasis added). As an alternative to an award of actual damages, the Lanham Act also authorizes an award of statutory damages:

> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

*Id.* § 1117(d).

██ Contrary to Defendants' suggestion, the Court concludes that Plaintiff's failure to register the ED ZINNER mark prior to filing this action does not preclude Defendants from recovering damages under section 1125(d). In one context, the Lanham Act's damages provision, 15 U.S.C. § 1117, references whether a plaintiff has registered his mark: the Lanham Act permits an award of damages for "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1117(a). Thus, the owner of a registered mark may recov-

er damages for violations of any of such owner's rights under the Act. However, the Lanham Act also permits an award of damages for "a violation under section 1125(a) and (d) of this title," without reference to whether the plaintiff has registered his mark. Accordingly, considering section 1117 as a whole, the Court concludes that a plaintiff need not register his mark to recover damages for a section 1125(d) violation.[11] Therefore, the Court rejects Defendants' contention that Plaintiff's "failure to timely register his alleged trademark in his personal name is an automatic bar to damages under 15 U.S.C. § 1125(d).[12] Defs.' Mot. for Summ. J. at 27.

■■■ The Court, next, will consider Defendants' argument that summary judg-

---

**11.** Reading a limitation into section 1117 requiring a plaintiff to possess a registered mark to recover for a section 1125(d) violation is problematic for a number of reasons. First, nothing in the text of the statute imposes such a limitation. *See POM Wonderful LLC v. Coca–Cola Co.,* —— U.S. ——, 134 S.Ct. 2228, 2236, 189 L.Ed.2d 141 (2014) ("analysis of the statutory text, aided by established principles of interpretation, controls"). The statute plainly states: "[w]hen ... a violation under section 1125 (a) or (d) of this title ... shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis added). Second, adopting Defendants' interpretation would render superfluous the statute's reference to "a violation under section 1125(a) or (d)" because another portion of the statute already authorizes an award of damages for "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office." *See Young v. United Parcel Serv., Inc.,* —— U.S. ——, 135 S.Ct. 1338, 1352, 191 L.Ed.2d 279 (2015) (internal quotation marks omitted) ("We have long held that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause is rendered superfluous, void, or insignificant."). Third, Congress's clear reference, in the first clause of the first sentence of subsection (a), to "a mark registered in the Patent and Trademark Office" strongly suggests that Congress did not intend, through its silence, to include such a requirement with respect to the second clause of such sentence, referring to "a violation under section 1125(a) and (d)." *See Loughrin v. United States,* —— U.S. ——, 134 S.Ct. 2384, 2391, 189 L.Ed.2d 411 (2014) ("when Congress includes particular language in one section of a statute but omits it in another—let alone in the very next provision—[a] [c]ourt presume[s] that Congress intended a difference in meaning.").

**12.** *Carl* does not support Defendants' assertion that failure to register a mark bars recovery of damages under section 1125(d) even if section 1125(d) liability is established. Defendants rely on *Carl* for the proposition that a plaintiff " 'is not entitled to recover damages' where he has failed to show that his personal name 'acquired a secondary meaning at the time' the domain name was registered or that he 'formally registered the mark with the U.S. Patent and Trademark Office.' " Defs.' Mot. for Summ. J. at 28 (quoting *Carl,* 662 F.Supp.2d at 497). However, while it is technically true that a section 1125(d) plaintiff alleging cybersquatting on a personal name mark cannot recover damages without showing that he registered such mark or that it possessed secondary meaning, that is simply a result of the requirement in section 1125(d) that the plaintiff possess an enforceable mark. The *Carl* court *did not,* as Defendants suggest, consider a situation in which a plaintiff possessed an enforceable mark in his name, but had not registered it at the time of the alleged cybersquatting violation. Instead, the court found that the plaintiff could recover no damages because he had failed to establish section 1125(d) liability in the first place as his name was not an enforceable mark. This holding is apparent once the Defendants' chosen snippet from *Carl* is placed in its full context: "Accordingly, plaintiff is not entitled to recover damages under 15 U.S.C. § 1117(d) because defendants have not violated § 1125(d)(1)." 662 F.Supp.2d at 497. Thus, nothing in *Carl* indicates that, if Plaintiff can establish liability under section 1125(d), his failure to register his mark prior to Defendants registering the edzinner.com domain name bars a recovery of damages.

ment on the issue of damages in Plaintiff's section 1125(d) claim is appropriate because Plaintiff has failed to adduce sufficient evidence of damages properly attributable to any of Defendants' conduct. More specifically, as noted above, Defendants contend that they are entitled to summary judgment on the issue of damages because Plaintiff has failed to present any evidence of damages tied to Defendants' registration or use of the edzinner.com domain name. Defendants' second damages argument implicates waiver principles because Defendants failed to raise such argument until their reply brief.

" 'Typically, courts will not consider an argument raised for the first time in a reply brief.' " *Touchcom, Inc. v. Bereskin & Parr*, 790 F.Supp.2d 435, 446 (E.D.Va. 2011) (quoting *Chang–Williams v. Dep't of the Navy*, 766 F.Supp.2d 604, 620 n. 16 (D.Md.2011)); *cf. Suarez–Valenzuela v. Holder*, 714 F.3d 241, 249 (4th Cir.2013) (quoting *A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356 (4th Cir.2008)) (" '[i]t is a well settled rule that contentions not raised in the argument section of the *opening brief* are abandoned.' "). However, "the power to decline consideration of such arguments is discretionary, and courts are not precluded from considering such issues in appropriate circumstances." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F.Supp.2d 731, 734 (D.Md.2006). "And, importantly, the primary reason for declining such consideration is where the opposing party is prejudiced in its ability to respond to the argument." *Touchcom, Inc.*, 790 F.Supp.2d at 446 (citation omitted).

In this case, the Court finds that it would not be appropriate to grant summary judgment in Defendants' favor on the issue of damages based on the alleged insufficiency of evidence of damages. Defendants failed to raise such argument until their reply brief and thereby deprived

Plaintiff of an opportunity to respond to such argument. Therefore, the Court considers Defendants to have waived such argument. *See id.* Accordingly, the Court will **DENY IN PART** Defendants' motion as to the issue of damages for Plaintiff's section 1125(d) claim.

In the alternative, the Court finds that a genuine dispute of material fact precludes summary judgment on the issue of damages for Plaintiff's section 1125(d) claim. Here, Plaintiff's sworn statements provide the only evidence of any damages from Defendants' registration or use of the edzinner.com domain name. Plaintiff has offered his own sworn testimony that he "lost business relationships, including investors as well as customers, as a result of the postings. Since March 2014 Zinner has lost approximately 15 investors who had invested approximately $1.7 million in his business—all of which has occurred since the first use of the domain name edzinner.com." Pl.'s Resp. Opp'n Mot. for Summ. J. Ex. B at 14, ECF No. ECF No. 27–2. In addition, according to Plaintiff's sworn statement, "[o]ne of Zinner's clients sent him an e-mail in which she referenced information posted on the website edzinner.com[, and] [t]hat client subsequently closed her account with Zinner's business." *Id.* at 13–14.

Although Plaintiff's evidence of actual damages from Defendants' registration or use of the edzinner.com domain name is somewhat thin, in their motion, Defendants overlook the availability of statutory damages. Even if Plaintiff cannot establish actual damages, he may elect to recover statutory damages if he establishes that Defendants violated section 1125(d). *See* 15 U.S.C. § 1117(d). Accordingly, in light of the availability of statutory damages, the Court cannot conclude that any deficiency in Plaintiff's evidence of actual damages precludes him from recovering

damages at a trial in this matter. Consequently, in the alternative, the Court will DENY IN PART Defendants' motion regarding the availability of damages in Plaintiff's section 1125(d) action.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment, ECF No. 26. The Court **GRANTS IN PART** such motion with respect to damages for Plaintiff's section 8131 claim. In all other respects, such motion is **DENIED IN PART.**

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**